Richard Payne appeals from a judgment ordering him to pay $700 per month for the post-minority support of his daughter Leslie.
Leslie Payne was born to Richard and Frances Payne on November 19, 1976. Her parents divorced on April 17, 1977, five months after she was born. In May 1977, the father sent the mother a letter promising to set aside $12,000 for Leslie's education and to make that sum available to her when she was 18 years old.
Initially, the divorce judgment did not provide for payment of child support by the father. On November 30, 1978, the judgment was modified to require the father to pay $125 per month in alimony and $100 per month in child support, but it provided that if the mother remarried while Leslie was a minor, then the entire $225 would be treated as child support. Shortly after the divorce, both parties left the State of Alabama.
The mother moved back to Alabama in 1979 and remarried. The father also remarried. The father continued to pay child support according to the terms of the 1978 modification order. He sent Leslie birthday and Christmas presents, and the mother kept him informed of significant events in Leslie's life, but the father had no personal contact with Leslie.
In November 1992, the mother, alleging that Leslie was then 15 years old and had additional expenses, sought another modification of the divorce judgment. On February 17, 1993, the judgment was modified to require the father to make monthly payments of $699.13, in compliance with the child support guidelines of Rule 32, Ala.R.Jud.Admin. Following that order, the mother continued *Page 1119 
to send the father informative notes about Leslie's activities and her progress in school, until in August 1993, she received the following letter from the father's wife:
 "I will continue to do my best on Leslie's behalf to ensure timely payments are made and you know Richard will make them as he has for fifteen or so years. And I am not fond of things particularly of this nature, but I do ask that you no longer address any correspondence to me although I will see that he opens, reads and responds to it.
 "We both ask that you limit your correspondence to simply including bills and a brief statement as to the amount you are due.
 "We trust that Leslie continues to thrive and achieve in the loving home and environment you and Jack have provided for virtually all of her years."
On November 10, 1994, the mother sought a further modification to provide for post-minority support and college education expenses pursuant to Ex parte Bayliss, 550 So.2d 986 (Ala. 1989).
The trial court held a Bayliss hearing on April 17, 1995. At that hearing, Leslie and her father saw each other for the first time in over 17 years. The evidence was undisputed that Leslie was an academically gifted honor student who had demonstrated the potential for success in college. She wanted to attend the University of Montevallo and major in special education. There was testimony that in order for Leslie to secure employment in her chosen field, it would be necessary for her to obtain a postgraduate degree, which would require one and one-half to two years of schooling beyond college. At the time of trial, the tuition, room, board, books, and fees at Montevallo amounted to $8001 per year.
The father's projected income for 1995 was $99,000 and his income for the past four years had been:
1994 $80,126.54
1993 $77,724.00
1992 $72,990.00
1991 $76,978.00
The father has a college degree and lives in a North Carolina condominium worth $127,500. He has a 401(k) retirement account valued at $26,029.04 and a profit sharing fund valued at $53,963.67. He had borrowed from his retirement account before in order to send another daughter by a prior marriage to college. The father contributed $38,000 toward the other daughter's education at Washington and Lee University. The father admitted that he had not set aside funds for Leslie's education as he had promised in the 1977 letter to the mother.
At the time of trial, the father had $1,200 in a savings account and $2,575 in stock certificates. The father testified that, in compliance with the terms of the initial divorce judgment and later modifications, he had named Leslie as co-beneficiary of his $500,000 life insurance policy. On that policy, he had specified that his current wife was to receive 95%, his parents 3%, and his two daughters each 1% of the proceeds of the policy. When asked whether he considered that arrangement to comply with the terms of the divorce judgment requiring him to name Leslie as a beneficiary of his life insurance, he answered:
 "A. I'm not aware that there is any decree that says she is to receive half of the benefits of my life insurance policy.
 "Q. The decree . . . says that she is to be a co-beneficiary. . . .
 "A. Yes, co-beneficiary means that she is a beneficiary and in no way dictates the amount of insurance.
 "Q. So the amount that you have chosen is one percent?
"A. For each child, that's right."
The father testified that his monthly expenses included a home mortgage payment of $800, a child support payment of $700, a car payment of $300, a life insurance premium of $225, and utility bills of $200-$300. He stated that his current wife needs knee surgery and that he needs hernia and hemorrhoid surgery, as well as some dental work. He testified that he owes his parents $15,000 and that he is currently repaying a $14,000 loan taken out on his 401(k) plan. He also testified that his wife's parents had died *Page 1120 
within the last two years and that their bodies had been cremated. He stated that he would like to have their remains interred, but that he cannot afford it.
The mother is a school teacher with a master's degree. Her projected income for 1995 was $33,000. In the three previous years, she had earned between $25,000 and $30,000. The mother's husband is a forester. Together, they had had an adjusted gross income of approximately $76,000 for each of the two years before trial. When Leslie was younger, the mother set up a trust for Leslie, with herself as the trustee. She funded the trust with $5000 of her own money, which she placed in a certificate of deposit. At the time of trial, the CD had grown to $23,294.18. The mother also established a savings account in Leslie's name. At the time of trial, that account had a balance of $18,821.55. The mother testified that the funds in the savings account had come from the father's child support payments. The mother stated that she had planned to use the money in the CD and/or the savings account when Leslie went to college to pay for a reliable car for Leslie and to pay for travel expenses, clothing, and a computer.
Following ore tenus proceedings, the trial court ordered the father to pay post-minority support of $700 per month for four years. The father was also ordered to cover the child on the health insurance plan provided through his employer or to secure replacement health insurance benefits for her as long as she qualified as a dependent. The mother was ordered to pay "all other expenses of such education and any other needs of the child." The mother was also awarded attorney fees in the amount of $4500.
The father filed a post-trial motion to alter, amend, or vacate the judgment, alleging that the order for post-minority support caused him undue hardship because he had recently been terminated from his employment. He stated that he had no income and could not continue paying a monthly health insurance premium of $258.36 and a monthly life insurance premium that would, by that time, amount to $234.47, as well as $700 per month in post-minority support. The father alleged that in order to replace the current level of health insurance coverage for Leslie he would have to pay $688.66 per month, with coverage not beginning for 90 days. The father stated that he was in the process of finding a new job and that he had consulted an out-placement counselor and an industrial psychologist in an effort to obtain comparable employment, but that he might have to accept a significant decrease in pay. The trial court granted the post-trial motion "as to the award of health and life insurance" and denied the motion in all other respects.
On appeal, the father argues that the trial court lacked subject matter jurisdiction because, he claims, the action should have been brought in Montgomery County, where the divorce judgment was entered, rather than in Baldwin County, where the mother and child resided. The father's argument — which concerns venue, not jurisdiction — was first raised below on the day of trial. The issue of improper venue is waived if not raised by responsive pleading or by motion under Rule 12(b)(3), Ala.R.Civ.P. See Rule 12(h)(1), Ala.R.Civ.P. Moreover, pursuant to Ala. Code 1975, § 30-3-5(2), venue in a proceeding for post-minority support is proper in the county where the mother and child have resided for at least three consecutive years immediately before the filing of the modification petition, or in the county where the divorce was granted. Abernathy v. State ex rel. Dunn, 627 So.2d 425
(Ala.Civ.App. 1993); Ex parte Dowling, 506 So.2d 340
(Ala.Civ.App. 1986). It was undisputed that the mother and child had resided in Baldwin County for three years before the filing of the modification petition.
The father next argues that the trial court ignored over $40,000 in funds (the savings account and the CD) available to the child for college and that it abused its discretion by ignoring those funds and by ordering him to pay the entire cost of her education.
 "The general principles concerning child support are 'equally applicable to a Bayliss motion for post-minority support.' Berry v. Berry, 579 So.2d 654, 656 (Ala.Civ.App. 1991). Child support is a matter that rests within the sound discretion of the trial court, and its judgment will not be reversed, *Page 1121 
absent a showing that it abused its discretion. Brannon v. Brannon, 477 So.2d 445 (Ala.Civ.App. 1985). Additionally, where the evidence is presented ore tenus in a child support case, the trial court's judgment is presumed correct. Berry, supra."
Wells v. Wells, 648 So.2d 617, 619 (Ala.Civ.App. 1994).
In Bayliss, our supreme court held that the trial court has discretion as to whether to order post-minority support at all and that in exercising that discretion the trial court shallconsider
 "all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education."
Ex parte Bayliss, 550 So.2d at 987 (emphasis in original). In addition, the trial may consider
 "the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance."
Id. The trial court's detailed and comprehensive order demonstrates that it considered all four of the factors outlined in Bayliss. Our review of the record convinces us that, while we might not have entered the same judgment the trial judge did, we cannot hold that the court abused its discretion in ordering post-minority support.
1. The financial resources of the parents and the child. The evidence presented at trial clearly established that the father had "sufficient estate, earning capacity, or income to provide financial assistance without undue hardship." Holley v. Rane,655 So.2d 1068, 1071 (Ala.Civ.App. 1995); Stanford v.Stanford, 628 So.2d 701, 703 (Ala.Civ.App. 1993). The trial court was authorized to consider, among other things, that the father had previously provided $38,000 for the daughter of another marriage to attend Washington and Lee University. SeeState ex rel. Bivins v. Bivins, 617 So.2d 286, 287
(Ala.Civ.App. 1992).
Despite the fact that the father earned more than twice as much as the mother, he had failed to set aside any funds for this daughter's education. The mother, on the other hand, had saved for Leslie's college expenses. The father argues that because the child already had substantial resources set aside for her education, he should not have been required to contribute at all to her college expenses.
We think the trial court was acting within its discretion in rejecting that argument; had the court accepted the argument, it would have penalized the mother for her prudence and farsightedness and rewarded the father for his improvidence and apparent indifference to the child. Furthermore, the trial court did not order the father to pay the entire cost of the daughter's education. The evidence at trial established that tuition, room, board, books, and fees at Montevallo amounted to $8001 per year. The father was ordered to pay $700 per month, or $8400 per year for four years.
As Judge Thigpen, writing separately in Finley v. Finley,648 So.2d 588 (Ala.Civ.App. 1994), observed, "Educational expenses involve more than tuition and books; therefore, the trial court should also consider 'evidence on the reasonable necessaries . . . for the child to attend college.' Thrasher[v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App. 1990)]." Finleyv. Finley, 648 So.2d at 591 (Thigpen, J., concurring in the result). The trial court had before it evidence that the child needed a reliable car and needed clothing and a computer and would incur travel expenses. It also heard evidence that in order to achieve employment in the field of special education, the child would have to obtain a master's degree, which would require one and one-half to two extra years of education. The trial court's order obligated the mother to pay all expenses of Leslie's education not covered by the father's payments. That obligation necessarily included items such as a car, computer, clothing, travel expenses, and other incidentals, as well as the entire cost of graduate school. The trial court could have considered these additional expenses and concluded that the $40,000 in funds available to the child for college would *Page 1122 
be substantially depleted upon completion of the child's post-graduate degree.
 "A post-minority support obligation should be based upon the reasonable necessaries of the child's college expenses. Thrasher, supra. The fact that the amount of post-minority support ordered happens to be the same amount as provided by the guidelines does not automatically denote error by the trial court. Brown v. Short, 588 So.2d 468
(Ala.Civ.App. 1991)."
Entrekin v. Entrekin, 627 So.2d 955, 957 (Ala.Civ.App. 1993).
Although the affidavit filed with the father's post-trial motion stated that he had lost his job and that he was currently unemployed, the trial court declined to modify the support order, except to the extent of removing the father's obligation to cover the child under his life and health insurance. The trial court was acting within its discretion in denying the motion. The court could well have decided that the father's duty to pay post-minority support should be based on the father's ability to earn rather than on his actual income. See Mitchell v. Kelley, 628 So.2d 807, 810 (Ala.Civ.App. 1993). Moreover, the trial court could have concluded, based on the father's own affidavit, that the father's reemployment prospects were good.
2. The child's commitment to and aptitude for a collegeeducation. This factor was undisputed at trial.
3. The standard of living that the child would have enjoyedif the marriage had not been dissolved and the family unit hadbeen preserved. Because both parents have a college degree, it appears that if the parties had remained married, the daughter would be attending college with the support of both parents. See Anonymous v. Anonymous, 646 So.2d 28, 31 (Ala.Civ.App. 1993).
4. The child's relationship with her parents andresponsiveness to parental advice and guidance.
In Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App. 1990), this court observed that
 "[t]he fact that the father and the daughter have a strained relationship should not preclude the daughter, in this instance, from having the opportunity to obtain a college education."
574 So.2d at 841. That observation is particularly applicable here. The evidence in the record indicates that it is the father's desire to have no relationship with his daughter, and that if the two are estranged, it is not the fault of the daughter. See Anonymous v. Anonymous, 646 So.2d at 31. Before she filed for Bayliss support, the mother sent the father a letter requesting his input and advice on Leslie's college plans. The father's response mirrored his long indifference to the child.
We find no abuse of discretion in the trial court's award of attorney fees to the wife. See Quillin v. Quillin,652 So.2d 294, 298 (Ala.Civ.App. 1994).
The mother's request for attorney fees on appeal is denied.
The judgment of the trial court is affirmed.
AFFIRMED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result.