[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1248 
John Arnett (the "father") and Bonnie Lou Arnett (the "mother") were divorced in October 1997. The divorce judgment incorporated a settlement agreement executed by the parties. Pursuant to the judgment, the father was required to pay $250 per month in alimony for 60 months, $403.45 per month in child support, and, once necessary, the lesser of $403.45 per month or one half of any college expenses incurred by the parties' son. At the time of the divorce, the father had two jobs, and his monthly gross income was $3,444.62. The father lost his second job, a part-time job driving a school bus for the Enterprise school system, in April 1997. The father then petitioned for a modification or termination of his alimony, child-support, and postminority-support obligations.
The father stopped paying child support when the son reached the age of majority in October 1998. He stopped paying alimony to the mother in August 1999. Although the son attended Enterprise Junior College, the father paid no postminority support. In December 1999, the father filed a petition for bankruptcy relief.
In January 2000, the mother counter-petitioned, requesting that the court hold the father in contempt and that it determine alimony-and postminority-support arrearages. The trial court, after conducting a hearing on January 20, 2000, denied the father's modification petition, held the father in contempt for nonpayment of alimony and postminority support, determined the alimony arrearage to be $1,250, and determined the postminority-support arrearage to be $6,726.84. The judgment also modified the father's postminority-support obligation by limiting it to four years and requiring the son to maintain "grades sufficient to be in good standing with the institution" in which he was enrolled. The father appeals, arguing that the evidence presented at trial supported at least a reduction in his alimony, child-support, and postminority-support obligations, that the trial court erred in its calculation of the postminority-support arrearage, and that the trial court erred in failing to appropriately limit postminority support.
 Modification or Termination of Alimony
First, the father argues that alimony should have been terminated or reduced because his income had decreased approximately $600 per month when he was terminated from his part-time employment.
 "The modification of periodic alimony is a matter within the discretion of the trial court, and on appeal, its judgment on that matter is presumed correct. This court will not reverse such a judgment unless it is not supported by the evidence or is otherwise plainly and palpably wrong. The trial court may modify an award of periodic alimony if the petitioner proves that a material change of circumstances has occurred since the last award was made. The trial court may consider several factors, including the earning capacity of each spouse, the recipient's needs and the payor's ability to meet those needs, and the estate of each spouse." *Page 1249 
Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala.Civ.App. 1995) (citations omitted) (emphasis added). When reviewing the judgment of the trial court, this court must remember that the trial court heard the evidence and observed the demeanor of the witnesses, and that it alone is entrusted to make the ultimate decision on contested issues. Swann v.Swann, 627 So.2d 429, 430 (Ala.Civ.App. 1993). The father specifically challenges the trial court's determination that he is voluntarily underemployed, a determination based on a finding that his termination from his part-time employment was due to his own misconduct. The father argues that the mother caused the termination of his employment by providing his supervisor records of the father's cellular telephone calls. The mother testified that she chose to reveal the father's cellular phone records, which disclosed telephone calls to his present wife around the time that they each should have been driving their school buses,[1] because of a past incident involving the father and her sister; however, the father argued to the trial court, and he argues on appeal, that the wife was motivated to reveal those records by vindictiveness over the divorce. Regardless of the reason behind the mother's decision to reveal the father's telephone records, the trial court was acting within its discretion in deciding that the father's termination resulted from his own misconduct on the job. It was also acting well within its discretion in determining that the father continued to have a sufficient earning capacity. Accordingly, the trial court's judgment, insofar as it declined to terminate or reduce periodic alimony, is affirmed.
 Modification of Child Support
The father also argues that the trial court should have modified its child-support order because of the reduction in his income caused by the loss of his part-time employment. Modification of child support is a matter that rests within the sound discretion of the trial court; the court's judgment on that matter will not be reversed absent an abuse of discretion or unless the judgment is plainly or palpably wrong. Bobo v.Bobo, 585 So.2d 54, 56 (Ala.Civ.App. 1991). Child support may be modified on a showing of materially changed circumstances. Gautney v. Raymond,709 So.2d 1279, 1281 (Ala.Civ.App. 1998). Because child support is for the benefit of the minor child, see State ex rel. Shellhouse v. Bentley,666 So.2d 517, 518 (Ala.Civ.App. 1995), the best interest of the child is the controlling consideration in an action for the modification of child support. Gautney, 709 So.2d at 1281.
According to Rule 32, a trial court is not bound to consider only a parent's actual income, but may also consider a parent's ability to earn. Rule 32(B)(1), Ala. R. Jud. Admin. A trial court can impute income to a parent "[i]f the court finds that . . . parent is voluntarily unemployed or underemployed." Rule 32(B)(5), Ala. R. Jud. Admin. To determine the amount of income to impute to a parent, the trial court "should determine the employment potential and probable earning level of that parent, based on that parent's recent work history, education, and occupational qualifications, and upon the prevailing job opportunities and earning levels in the community." Rule 32(B)(5). As we stated above, the trial court's determination that the father's misconduct at work resulted in his underemployment is supported by the record, and its determination that a modification was not warranted by the father's *Page 1250 
decreased income is not an abuse of its discretion.
 Modification or Termination of Postminority Support
The father argues that the trial court erred by failing to modify or terminate the husband's postminority-support obligation in light of his decrease in income. He also argues that the trial court failed to consider the son's own employment income, which was approximately $240gross per week. Finally, he argues that the postminority-support provision contained in the trial court's judgment is not appropriately limited.
We have sufficiently explained that the trial court's decision that the father was voluntarily underemployed is supported by the evidence and that it is within the trial court's discretion to determine not only the father's earnings, but also his ability to earn. The trial court determined that the father's own misconduct led to his termination and that his son should not be penalized by that misconduct. Although a trial court should consider whether postminority support imposes an undue hardship on a parent, see Thrasher v. Wilburn, 574 So.2d 839, 842
(Ala.Civ.App. 1990) (discussing undue hardship), we cannot conclude that a postminority-support obligation of approximately $445 per month[2] is an undue hardship, considering the father's earning ability.
Despite the father's argument to the contrary, the trial court was notrequired to order the son to contribute to his own college expenses. Our supreme court has stated that a trial court has jurisdiction to "award sums of money out of the property and income of either or both parents for the post-minority education of a child." Ex parte Bayliss,550 So.2d 986, 987 (Ala. 1989) (emphasis added). Our supreme court also has stated that the trial court should consider the financial resources of the child. Bayliss, 550 So.2d at 987. The son testified that he used his employment income to pay his automobile payment and for miscellaneous entertainment expenses. The father had agreed, and in the trial court's judgment on the modification petition was ordered, to pay half of the son's college expenses. Clearly, the other half of those expenses must be paid, either by the mother, by the son, or by other means, e.g., loans, scholarships, or work-study programs. Accordingly, we cannot conclude, as the father apparently has, that the trial court did not consider the son's earnings when it decided not to modify or terminate the father's postminority-support obligation. In fact, it appears that the trial court did consider the son's ability to assist in paying for his own education and appropriately required the father to bear only half of the expenses for that education.
The father's final argument concerning the trial court's failure to modify his postminority-support obligation is that the trial court's judgment failed to appropriately limit that award. Specifically, the father points out that the trial court failed to require the son to maintain a "C" average and that it failed to account for the son's stated intent to "co-op" during his years at Auburn.
The trial court's judgment requires that the son to "maintain passing grades sufficient to be in good standing with the institution." We conclude that this is a *Page 1251 
reasonable limitation on the son's grade performance. SeeBahri v. Bahri, 678 So.2d 1179, 1181 (Ala.Civ.App. 1996) (holding that trial court erred by not requiring child to "maintain reasonable grades").
The father's other argument, that the trial court's postminority-support award fails to take into consideration the son's intent to "co-op" while pursuing his degree, while not entirely without merit, is not sufficiently developed to convince this court that a reversal of the award is warranted. The father first points out that the son will receive income from the employment required by the "co-op" plan; however, as addressed above, the son's income can certainly be used to defray the other half of the costs associated with his education. The postminority-support award included in the trial court's judgment requires that the son "attend an accredited college on a full-time basis" and that he "carr[y] the required load." This court is not certain whether the son's participation in the "co-op" plan would prevent him from being considered a full-time student during those semesters he is working. Like the father, we are equally uncertain about the father's responsibility under the postminority-support award for any semesters in which the son is working, unless, of course, the "co-op" plan is considered to be tantamount to full-time enrollment. Without more evidence presented by the father concerning the potential impact of the "co-op" plan, this court cannot reverse the postminority-support award on that basis.
 Calculation of Postminority-Support Arrearage
The father next argues that the trial court incorrectly determined his postminority-support arrearage by including in the calculations expenses not actually incurred by the son. The father agreed to pay "one-half of any college expenses incurred by the parties' son." The agreement also indicated that "[t]his obligation is in the form of postminority support," which we believe is a reference to our supreme court's expansion in Bayliss of a parent's duty to pay child support past the age of majority in cases involving children attending college. Whether under general principles regarding the enforcement of separation agreements,see Smith v. Smith, 568 So.2d 838, 839 (Ala.Civ.App. 1990) ("[A] settlement agreement which is incorporated into a divorce [judgment] is in the nature of a contract."), or under the principles of Bayliss and its progeny, we conclude that to include in the arrearage an amount not actually expended for the son's education is error.
The testimony at trial indicated that the son attended a local junior college while living at home. Over $4,000 of the postminority-support arrearage awarded is based on room and board costs calculated by the mother based on what the son would have paid for room and board if he had attended Auburn University and had lived on campus. Quite clearly, that amount was not a "college expense incurred by the parties' son." In construing the terms of the settlement agreement, as in general contract law, the words used "are to be given their ordinary meaning." See Sartinv. Sartin, 678 So.2d 1181, 1183 (Ala.Civ.App. 1996). The word "incur" means "to become liable or subject to." Miriam Webster's CollegiateDictionary 611 (10th ed. 1997). The son is not liable for the expenses for room and board "projected" by the mother; accordingly, those expenses exceed the amounts the father agreed to be liable for. In addition, underBayliss and its progeny, a trial court should consider, among other things, "actual expenses" in determining an appropriate postminority-support award. See Thrasher, 574 So.2d at 841. Accordingly, *Page 1252 
the trial court's judgment, insofar as it determined the father's postminority-support arrearage to be $6,726.84, is reversed. On remand, the trial court is instructed to reconsider, based on the evidence of record, what expenses the son actually incurred for room and board.
 Conclusion
The trial court's judgment, insofar as it declined to modify or terminate alimony, child support, or postminority support, is affirmed. The postminority-support award contained in the trial court's judgment is also affirmed. The judgment, insofar as it calculated the father's postminority-support arrearage to be $6,726.84, is reversed, and the cause is remanded for the recalculation of the costs actually incurred by the son during the 15 months the father failed to pay postminority support.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Pittman, J., concurs.
Thompson and Murdock, JJ., concur in the result.
Yates, P.J., concurs in part and dissents in part.
[1] The father's present wife was also employed by the Enterprise school system as a bus driver; she was also terminated from her employment in April 1997.
[2] We have estimated the actual postminority-support obligation based upon the arrearage awarded by the trial court (approximately $6,700 divided by 15 months). Although we will be reversing the arrearage calculation, the son will be transferring to Auburn University, and the room and board expenses for Auburn that we are excluding from the arrearage will likely be incurred once he transfers.