904 So.2d 1275 (2004)
Edward Lee WADDELL, Jr.
v.
Holayne Lester WADDELL.
No. 2020219.
Court of Civil Appeals of Alabama.
September 24, 2004.
Certiorari Denied January 14, 2005.
*1277 Lindsey Mussleman Davis of Holt, Mussleman, Holt & Morgan, Florence, for appellant.
Charles W. Cochran III, Florence, for appellee.
Alabama Supreme Court 1040046.
MURDOCK, Judge.
This case was commenced by the filing of a petition by Holayne Lester Waddell ("the mother") seeking a modification of a 1995 judgment divorcing her from Edward Lee Waddell, Jr. ("the father"). Among other things, the mother's petition sought an award of postminority educational support for the benefit of the parties' two sons in accordance with our Supreme Court's holding in Ex parte Bayliss, 550 So.2d 986 (Ala.1989), and an award of periodic alimony. The father responded to the mother's petition by, among other things, filing an answer in which he denied that the mother was entitled to the relief she requested and filing what he styled as a "motion" seeking a reduction of his child-support obligation. From a final judgment generally favoring the mother on these and other issues, the father appeals.
The mother and the father were married in 1979. The parties had two minor sons at the time of the divorce in 1995. Based on his annual income of $65,000 at the time of the divorce, the father was ordered to pay child support in the amount of $464 biweekly, as well as a portion of his sons' medical expenses. The trial court did not award the mother any alimony at the time of the divorce, but it reserved the right to do so in the future.
Following the divorce, the father moved to Missouri and married a woman with whom he had been having an adulterous relationship that had led to the divorce. Subsequently, in 1997, the father petitioned to modify his child-support obligation on the ground that his annual income had decreased from $65,000 at the time of the divorce to only $20,000 at the *1278 time he filed the petition. The trial court denied the petition; neither party appealed from that judgment.
In April 2001, when the parties' older son was 18 years old and the younger son was 16 years old, the mother filed her petition requesting postminority educational support for the benefit of each of the parties' sons and an award of alimony. The mother also complained that the father had failed to reimburse her for $650 in medical expenses she had incurred on behalf of the parties' sons and sought an order from the trial court holding the father in contempt. In June 2001, the father filed his motion requesting a reduction in his child-support obligation, asserting as grounds therefor the fact that the parties' older son had turned 19 years old on June 1, 2001.
Following a hearing at which both parties presented testimony and documentary evidence, the trial court entered a judgment on August 13, 2002, terminating the father's obligation to pay child support for the older child and setting the father's child-support obligation at $298 per month for the younger child until he reached the age of majority. The judgment also required the father to pay one-half of the college expenses for both sons, but denied the mother's request for alimony. The trial court also ordered the father to reimburse the mother for $658 in medical expenses for the children and $1,500 in attorney fees.
The mother filed a Rule 59, Ala. R. Civ. P., motion asking the trial court to amend its August 13, 2002, judgment; the trial court granted the motion. The amended judgment, entered by the trial court on October 29, 2002, required the father to pay all college expenses for both of the parties' sons, to reimburse the mother $5,451.72 for college expenses she had already incurred, and to pay child support in the amount of $464 per month for the younger son. The trial court also awarded the mother $300 per month in periodic alimony.
The father appeals and argues that the trial court erred (1) in awarding any postminority support, because of the breakdown in the relationship between the father and his sons, (2) in ordering postminority support for an unspecified period of time, (3) in requiring the father to pay room and board as postminority support while the parties' sons continue to reside with the mother, (4) in requiring the father simultaneously to pay child support and "postminority" educational support for the parties' younger son, who was still a minor, (5) in requiring the father to continue to provide health insurance for the parties' sons past the age of majority while they attend college, (6) in calculating the amount of the father's child-support obligation for the parties younger son, and (7) in awarding the mother periodic alimony.

I. Postminority-Support Issues

In Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), our Supreme Court held that the trial court has discretion whether to order postminority educational support at all, and that, in exercising that discretion, the trial court shall consider
"all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education."
Ex parte Bayliss, 550 So.2d at 987 (emphasis in original). In addition, the trial court may consider
"the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship *1279 with his parents and responsiveness to parental advice and guidance."
Ex parte Bayliss, 550 So.2d at 987.
After he graduated from high school, the parties' older son attended Shoals Community College for two years on a tuition scholarship. The mother paid the older son's college-related expenses other than tuition, which totaled $1,199.04 for both years. In 2002, following his sophomore year, the older son transferred to the University of North Alabama ("UNA"), where the parties' younger son also enrolled as a freshman. The mother paid the Fall 2002 tuition and enrollment fees for both sons, which she testified totaled $4,252.68.[1]
There is no dispute that both of the parties' sons have the aptitude for and commitment to continuing their college educations. There is also no dispute that the father has sufficient financial resources to pay for the sons' educations. At the time of the divorce, the father had already established a brokerage account specifically intended to pay for the sons' college expenses. At the time of the divorce, the account had a value of $27,000; as of the August 2002 hearing, according to the father's testimony, the account's value had grown to approximately $165,000.

A. The Effect of the Relationship of the Father and His Sons on the Award of Postminority Support

The father first contends that the trial court has wrongly required him to provide postminority support when the parties' sons do not respect him and are not responsive to his parental advice and guidance. The father testified that his sons refuse to visit him or to communicate with him and that he was not even invited to the younger son's high-school graduation. The mother testified that she had discussed with the sons their obligation to communicate with their father but that the father no longer called them. With the approval of both parties, the trial judge met with both sons in chambers before issuing his original judgment; however, there is no transcript of their discussion.
The Alabama Supreme Court held in Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), that a trial court "may" consider "the child's relationship with his parents and responsiveness to parental advice and guidance" in deciding whether and to what extent a noncustodial parent should be obligated to provide postminority educational support for his or her children following a divorce. 550 So.2d at 987. The existence of a strained relationship between a parent and his or her child does not necessarily prevent the child from having the opportunity to obtain a college education. See Penney v. Penney, 785 So.2d 376 (Ala.Civ. App.2000), and the cases cited therein.
In addition, as this court noted in Thrasher v. Wilburn, 574 So.2d 839 (Ala. Civ.App.1990):
"Where evidence is presented ore tenus, as in this instance, the trial court's judgment is presumed correct unless it is so unsupported by the evidence that it is plainly and palpably wrong. Furthermore, matters concerning child support are within the trial court's discretion and will be reversed only upon a showing that the trial court abused its discretion or that its determination is plainly and palpably wrong."
Thrasher, 574 So.2d at 841 (citation omitted). Further, in the absence of a transcript of the in camera interview of the *1280 children, we assume that the trial court's interview of the parties' sons supports the trial court's judgment. See, e.g., Hughes v. Hughes, 685 So.2d 755, 757 (Ala.Civ. App.1996) ("Although the trial court's in camera interviews with the children were not transcribed and are not contained in the record, we presume that the interviews further support the trial court's order.").
Although the relationship between the father and his sons may be strained, the trial court concluded that this was at least partially the result of the father's adulterous conduct that led to the divorce. Based on our review of the record and the judgment of the trial court, we cannot conclude that the trial court abused its discretion in awarding postminority support in this case.

B. The Temporal Limitations on the Award of Postminority Support

The father next argues that the trial court should have limited the father's duty to provide postminority support to a definite period of time. The portion of the trial court's judgment awarding postminority support reads as follows:
"There exists a `College Fund' that was specifically set up by the father/defendant to pay the college expenses for the two sons. Therefore, all college expenses that directly relate to room, board, books, tuition and fees are to be paid from this `fund.' Further, this charge shall continue until the sons finish college within a reasonable period of time, maintain at least a `C' average, and are full time students. Additionally, room and board costs are to be determined by the rates established by the University of North Alabama as it pertains to a student living on campus and sharing a room with one roommate."
(Second emphasis added.)
This court has held "that the trial court must set reasonable limitations on the parent's responsibility for postminority educational support, because the failure to do so may impose an undue hardship on the paying parent." Hertzberg v. Gainey, 855 So.2d 561, 564 (Ala.Civ.App.2003) (citing Penney v. Penney, 785 So.2d 376; Ullrich v. Ullrich, 736 So.2d 639, 643 (Ala.Civ. App.1999); and Kent v. Kent, 587 So.2d 409 (Ala.Civ.App.1991)). "These limitations include (1) limiting the support to a reasonable period, (2) requiring the child to maintain at least a `C' average, and (3) requiring that the child be enrolled as a full-time student." Penney, 785 So.2d at 379.
In general, a trial-court judgment that prescribes a definite duration for a noncustodial parent's obligation to provide postminority financial support to a child better allows that parent to make plans for the payment of that support. Moreover, if the specific duration of the postminority-support obligation is unknown, the noncustodial parent may be unable to measure, or "make the case" for, the degree of hardship that ultimately will be caused by that award.
In the present case, the trial court's use of the term "reasonable period of time" in its judgment will mean, at best, that the judgment will be open to interpretation by the trial court at some future date and that the father will be hard-pressed to obtain a critical appellate review of whatever interpretation the trial court may place on that term at that time. See, e.g., Hallman v. Hallman, 802 So.2d 1095, 1098 (Ala.Civ. App.2001) ("A trial court has the inherent power to interpret, implement, or enforce its own judgment."). At worst, it might be argued that the fact that the judgment leaves the parties with an issue to determine on their own prevents that judgment from being a final judgment. See Turner v. Turner, 883 So.2d 233, 234 (Ala.Civ.App. 2003) (noting that a final judgment is a *1281 terminable decision that is conclusive and certain, "`with all matters decided'"); see also Jewell v. Jackson & Whitsitt Cotton Co., 331 So.2d 623, 625 (Ala.1976) ("A final judgment is a terminative decision by a court of competent jurisdiction which demonstrates there has been complete adjudication of all matters in controversy between the litigants within the cognizance of that court. That is, it must be conclusive and certain in itself.... All matters should be decided; damages should be assessed with specificity leaving the parties with nothing to determine on their own." (Emphasis added.)).
In light of the foregoing, we hold that an award of postminority educational support for a "reasonable period of time" lacks sufficient certainty. Such an award does not satisfy the purposes for which this court has held that an award of postminority support must include a temporal limitation. Therefore, that part of the trial court's judgment in the present case limiting the father's postminority-support obligation to a "reasonable period of time" is reversed. Upon remand, the trial court should modify its judgment to more specifically state the period during which the father is obligated to provide such support.[2]

C. Expenses for Room and Board

The father further argues that the trial court erred by requiring that his postminority-support obligation include an amount equivalent to the cost of room and board at UNA, even though both of the parties' sons continue to live at home with their mother. Although the language of the judgment is not entirely clear, it does appear that the trial court's judgment requires the father to pay the equivalent of room and board expenses to the mother for both sons while they are attending college.
In Arnett v. Arnett, 812 So.2d 1246 (Ala. Civ.App.2001), an award of postminority support was based on an agreement between the parents that the father would pay "the lesser of $403.45 per month or one half of any college expenses incurred by the parties' son." 812 So.2d at 1248. The son in Arnett attended a junior college for two years while living at home with the mother. After the father fell behind on his obligations, the trial court ordered him to reimburse the mother for the son's college *1282 expenses, including over $4,000 in room and board costs calculated by the mother based on what the son would have paid for room and board if he had attended Auburn University and had lived on campus. This court reversed the trial court's judgment, holding:
"Whether under general principles regarding the enforcement of separation agreements, or under the principles of Bayliss and its progeny, we conclude that to include in the arrearage an amount not actually expended for the son's education is error."
Arnett, 812 So.2d at 1251 (citation omitted). We must likewise conclude that it was error for the trial court's judgment to require the father to pay room and board costs when no such costs are actually expended.

D. The Overlap of Child Support and "Postminority" Educational Support

The father also argues that the trial court erred by requiring him to pay college-related expenses for the younger son while the younger son is a minor and the father is still paying child support for that son's benefit. While we are inclined to agree with the father's argument insofar as it relates to the trial court's award of separate room and board expenses, that issue is not ripe for our consideration on the facts presented. As we held above, during such time as either son continues to reside at home, the father will not be charged with any separate room and board expenses. In the event that during the younger son's minority he were to incur actual room and board expenses associated with his college education, the issue of the "overlap" of those room and board expenses and the father's child-support obligation would be squarely presented. Those are not the facts presented to us in this appeal, however.
To the extent the father contests the overlap in his child-support obligation with the requirement that he pay for tuition and fees associated with the younger son's college education, we conclude that his argument is not well-taken. In essence, the father argues that, although a parent may have an obligation under Ex parte Bayliss to pay for a child's college or other postsecondary educational expenses after the child reaches the age of majority, no such obligation is to be imposed upon a parent so long as the child remains a minor. Our Supreme Court rejected this very notion in Ogle v. Ogle, 275 Ala. 483, 156 So.2d 345 (1963). Indeed, the Supreme Court's reaffirmation in Ex parte Bayliss of its view on this issue laid the foundation for its holding in that case as to post minority educational support:
"This Court in deciding this issue in Ogle v. Ogle, 275 Ala. 483, 486, 156 So.2d 345, 348 (1963), wrote:
"`While there are divergent views on the question, it seems to us that the cases from other jurisdictions holding that a father may be required to contribute toward the college education of his minor child, who is in his mother's custody pursuant to a divorce decree, are supported by the better reasoning.'
"[The son] was born March 5, 1969. If the age of majority had remained 21 years, as it was from 1852 to 1975, [the son] would have been entitled to have his father contribute toward his college education, at least until [the son turned 21 years of age]."
Ex parte Bayliss, 550 So.2d at 990-91.
We therefore reject the argument that the trial court erred in requiring the father to pay the cost of tuition, books, and fees associated with the younger son's postsecondary education merely because some of *1283 those costs would be incurred during the son's minority.

E. Postminority Health Insurance

The father also argues that the trial court erred by requiring him to provide health-insurance coverage for the sons after they reach the age of majority and while they are attending college. We disagree.
Assuming that the facts of a case otherwise justify the awards under the criteria announced in Ex parte Bayliss, we see no principled, material distinction between an award of health-insurance costs and an award of other educational expenses, such as room and board. As a practical matter, the former often may be just as necessary as the latter to enable children of divorced parents to devote themselves to the pursuit of college educations. Within the analytical framework of Ex parte Bayliss, reason compels the conclusion that a child should not be required to run the risk of incurring a serious or even catastrophic injury without the ability to afford medical care in order to obtain that education, at least where the child's parents can afford to remove, and in the absence of a divorce would have removed, that risk for the child.
The justness of maintaining children in as near as possible the same position they would have been in absent a divorce was central to our Supreme Court's reasoning in Ex parte Bayliss. As the Court explained,
"[h]ad the Bayliss family unit not been put asunder by divorce, would the father, who had attended college and was a man of significant means, have continued to provide a college education for [their son] ... after [the son] reached 19 years of age? If so, the father's educational support obligations should not cease when [the son] reached 19 years of age.

"The Legislature has given circuit courts the `power' to divorce persons for certain causes. While the rights of the parties to the divorce action must be fully respected, the public occupies the position of a third party in a divorce action; and the court is bound to act for the public. Flowers v. Flowers, 334 So.2d 856 (Ala.1976); Hartigan v. Hartigan, 272 Ala. 67, 128 So.2d 725 (1961); Ex parte Weissinger, 247 Ala. 113, 22 So.2d 510 (1945).
"This Court in Ogle[ v. Ogle], 275 Ala. [483,] 487, 156 So.2d [345,] 349 [(1963)], quoted the following from Pass v. Pass, 238 Miss. 449, 118 So.2d 769, 773 (1960), with approval:
"`"[W]e are living today in an age of keen competition, and if the children of today ... are to take their rightful place in a complex order of society and government, and discharge the duties of citizenship as well as meet with success the responsibilities devolving upon them in their relations with their fellow man, the church, the state and nation, it must be recognized that their parents owe them the duty to the extent of their financial capacity to provide for them the training and education which will be of such benefit to them in the discharge of the responsibilities of citizenship. It is a duty which the parent not only owes to his child, but to the state as well, since the stability of our government must depend upon a well-equipped, a well-trained, and well-educated citizenship. We can see no good reason why this duty should not extend to a college education. Our statutes do not prohibit it, but they are rather susceptible of an interpretation to allow it. The fact is that the importance of a college education is being more and *1284 more recognized in matters of commerce, society, government, and all human relations, and the college graduate is being more and more preferred over those who are not so fortunate. No parent should subject his worthy child to this disadvantage if he has the financial capacity to avoid it."'
"This is the public policy of our State. Since the normal age for attending college extends beyond the age of 19 years, under § 30-3-1[, Ala.Code 1975,] courts have the right to assure that the children of divorced parents, who are minors at the time of the divorce, are given the same right to a college education before and after they reach the age of 19 years that they probably would have had if their parents had not divorced."
Ex parte Bayliss, 550 So.2d at 994-95 (emphasis added).
We also are mindful of the fact, as Judge Crawley noted in his dissenting opinion in Luce v. Luce, 681 So.2d 613 (Ala.Civ.App.1996), that "[t]he requirements for full-time [student] status, a level of academic achievement, and age or term limitations used by the trial court are common characteristics of Bayliss support [orders]." Luce, 681 So.2d at 617 (Crawley, J., dissenting) (citing Barnes v. State ex rel. Barnes, 653 So.2d 310 (Ala.Civ.App. 1994); Meador v. Meador, 628 So.2d 907 (Ala.Civ.App.1993); and Kent v. Kent, 587 So.2d 409 (Ala.Civ.App.1991)). Obviously, such restrictions can combine to make it more difficult in some cases for a student to maintain employment, from which funds for health insurance might be obtained, while pursuing a college education.[3]
In reaching our holding today, we acknowledge some inconsistency in the views reflected in this court's opinions as they bear on this issue. Several cases reflect the view that health-related expenses are not properly includable in a judgment awarding Bayliss support. See McKnight v. McKnight, 888 So.2d 1251, 1264 (Ala. Civ.App.2004) (plurality opinion with two judges concurring and three judges concurring in the result of not requiring the father to pay postminority health-related expenses); Amaro v. Amaro, 843 So.2d 787 (Ala.Civ.App.2002); Gage v. Cochran, 777 So.2d 720 (Ala.Civ.App.2000); Luce, supra (plurality opinion with two judges concurring and one judge concurring in the result). Other cases suggest that health-related costs may be awardable in a proper case. See Smith v. Smith, 836 So.2d 893 (Ala.Civ.App.2002) (dictum); Payne v. Williams, 678 So.2d 1118 (Ala. Civ.App.1996) (plurality opinion with two judges concurring and one judge concurring in the result).[4] The latter view also *1285 has been repeatedly expressed in recent years by Judge Crawley, often in special writings. See Amaro v. Amaro, 843 So.2d 787, 798 (Ala.Civ.App.2002) (Crawley, J., concurring specially); Gage v. Cochran, 777 So.2d 720, 723 (Ala.Civ.App.2000) (Crawley, J., concurring in part and dissenting in part); Luce v. Luce, 681 So.2d at 617 (Crawley, J., dissenting). Today, we hold that health-care expenses may be properly includable in a judgment awarding Bayliss support. We overrule those cases cited above that reflect a contrary view.
The first case decided by this court in which a lead opinion stated the position that health-related expenses may not be included as part of Bayliss-type relief was Luce v. Luce. The subsequent case of Gage v. Cochran relied solely upon Luce as authority for the same proposition. Amaro v. Amaro, in turn, relied upon Gage, as well as Luce, in restating this proposition.[5]Luce, however, was a plurality opinion and does not constitute binding precedent. Further, Luce relied upon Barnes v. State ex rel. Barnes, 653 So.2d 310 (Ala.Civ.App. 1994), for the proposition that a trial court has no authority to require the payment of health-insurance costs as part of an award for postminority educational support. Barnes, however, merely reversed a trial court's award of health-insurance costs because there was no evidence that the parties' adult son was physically or mentally disabled, see Ex parte Brewington, 445 So.2d 294 (Ala.1983), and it did "not appear that the trial court considered the maintenance of health insurance to be in the nature of Bayliss support." 653 So.2d at 312. Barnes did not preclude the affirmance of a trial court's award of health-related expenses in an appropriate case in the future, provided that those expenses shall have been considered by the trial court to be in the nature of Bayliss support. See Luce, 681 So.2d at 617 (Crawley, J., dissenting).
As was aptly noted in Payne v. Williams, "`[e]ducational expenses involve more than tuition and books; therefore, the trial court should also consider "evidence on the reasonable necessaries ... for the child to attend college." Thrasher [v. Wilburn, 574 So.2d 839, 841 (Ala.Civ. App.1990)].'" 678 So.2d at 1121 (quoting Judge Thigpen's special writing concurring in the result in Finley v. Finley, 648 So.2d 588, 591 (Ala.Civ.App.1994)). For some time now our law has recognized the need *1286 for health insurance by making special provision for it as part of child support for minor children. See Rule 32(A)(4), Ala. R. Jud. Admin. Likewise, the necessity of some provision for health care for a young adult if he or she is going to postpone entry into the workforce and devote several years to the pursuit of a postsecondary education is clear enough. Given the financial ability of the father and the needs of the children in the present case, we affirm the judgment of the trial court insofar as it requires the father to maintain health insurance for the benefit of his sons while they are attending college.

II. Child Support

In his brief to this court, the father complains that "the trial court's basis for determining the parties' child-support obligation [for the younger son] [is] unclear." He does not argue that the amount of child support the trial court ordered him to pay was in excess of that which he should have been required to pay pursuant to Rule 32, Ala. R. Jud. Admin., or that the trial court in any way miscalculated the parties' child-support obligations. He argues only that "no calculation documentation utilized by the [trial court] was included with the court's ruling" and that because "no Child Support Guideline form was filed, this court must reverse and remand for further proceedings in compliance with A.R.J.A. 32."
Our review of the record reveals that both parties filed a CS-41 Child Support Obligation Income Statement/Affidavit form with the trial court. The father filed a CS-42 Child Support Guidelines form; however, the mother did not file a Form CS-42. Both parties also gave testimony at trial regarding their respective incomes.
The evidence indicates that the mother, who was not working at the time of the divorce, now has a monthly gross income of $1,708. The CS-41 form filed by the father states that the father's monthly gross income is $4,013. The combination of these two amounts would result in a combined monthly gross income for the parties of $5,721. The basic child-support obligation prescribed under Rule 32 for one child based on a combined monthly gross income of $5,721 is $727, plus the amount paid each month for health insurance for the child, in this case $200. Utilizing the income information provided in the father's CS-41 form, therefore, the father's child-support obligation would be 70% of $927, or $648.90. Adjusting for the fact that the father pays the health-insurance premium of $200 each month, the recommended monthly child-support obligation of the father would be $448.90, or $15.10 less than that which was awarded by the trial court.
The trial court's judgment requiring monthly child-support payments of $464 from the father, however, appears to be based upon a different monthly income for the father than is reflected in the father's CS-41 form. Specifically, the father testified at trial that his income in 2000 was $49,156, or $4,096 per month. Based on this amount of monthly income for the father, the combined monthly gross income of the parties would be $5,804; the father's income would represent 71% of this figure. The prescribed basic child-support obligation under Rule 32 for one child based on a combined gross income of $5,804 is $737 per month, plus the amount paid each month for health insurance for the child, which in this case is the $200 paid by the father. The father's child-support obligation therefore would be 71% of $937, or $665.27. Adjusting for the father's monthly health-insurance payments of $200, the recommended monthly child-support obligation of the father would be $465.27, or $1.27 per month more than that which the *1287 trial court actually ordered the father to pay each month.
Based on the record before us and on the absence of any contention by the father that the trial court actually miscalculated the amount of his child-support obligation, much less that the trial court made an error in this regard that inured to the father's detriment, we see no basis for reversing the trial court's judgment with respect to the amount of child support awarded for the benefit of the younger son. See, e.g., Hildesheim v. Velaski, 769 So.2d 920 (Ala.Civ.App.1999) (rejecting a father's argument that his failure to receive notice of a hearing that led to an award of an insurance premium as part of child support was reversible error, reasoning that the father did not contend on appeal that he was "actually prejudiced" by his failure to appear at the hearing).

III. The Alimony Issue

The question whether to award alimony is entrusted to the sound discretion of the trial court, and the court's ruling on that question will not be set aside absent an abuse of that discretion. O'Neal v. O'Neal, 678 So.2d 161, 164 (Ala. Civ.App.1996). "`In reviewing a judgment of the trial court in a divorce case, where the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule.'" Johnson v. Johnson, 840 So.2d 909, 911 (Ala.Civ.App.2002) (quoting Fowler v. Fowler, 773 So.2d 491, 493 (Ala.Civ.App.2000)). Further, the issue of alimony is within the discretion of the trial court, and its decision on that issue will not be overturned on appeal unless it is "plainly and palpably wrong" or unless the trial court has abused its discretion. Id.
To be successful on a petition to modify alimony, "the moving party must show a material change in the financial needs of the payee spouse and in the financial ability of the payor spouse to respond to those needs." Glover v. Glover, 730 So.2d 218, 220 (Ala.Civ.App.1998) (citing Stevens v. Stevens, 641 So.2d 825 (Ala.Civ. App.1994)). Likewise, this court has held that, where a trial court reserves the issue of alimony, any subsequent award of alimony must be supported by a showing of materially changed circumstances. Crenshaw v. Crenshaw, 816 So.2d 1046 (Ala. Civ.App.2001).
"In considering whether to modify an alimony obligation, the court should consider the earning capacity of the spouses, the payor's ability to meet the needs of the recipient spouse, and the estates of the respective parties." Edwards v. Edwards, 894 So.2d 698, 700 (Ala.Civ. App.2004) (citing Kiefer v. Kiefer, 671 So.2d 710 (Ala.Civ.App.1995)). "Factors the trial court may consider in determining whether to modify alimony include `the recipient spouse's financial needs, the amount of the estate of each spouse, the ability of the payor spouse to respond to the recipient spouse's needs, the ability of each spouse to earn income, and the remarriage of either party.'" Posey v. Posey, 634 So.2d 571, 572-73 (Ala.Civ.App. 1994) (quoting White v. White, 589 So.2d 740, 742 (Ala.Civ.App.1991)).
At the time of the parties' divorce in 1995, the mother, unlike the father, had not been in the workforce and had no earnings "track" record, a fact that no doubt informed the trial court's decision to reserve judgment on the proper amount, if any, of periodic alimony to be awarded. Although the father's income is less than it was at the time of the divorce, it is not insignificant at $49,156. In contrast, while the mother now has a track record of earnings, those earnings have yet to exceed approximately $20,000 per year. Further, the record supports the mother's *1288 contention that she is not close to being able to maintain the "lifestyle or status similar to the one enjoyed during their marriage." See generally Johnson, supra. The record contains substantial evidence from which the trial court reasonably could conclude that the father's financial ability to respond to the mother's financial needs has improved since the divorce. Among other things, the father's Merrill Lynch investment fund has increased in value from $27,000 at the time of the divorce to $165,000.[6]
The amount of alimony awarded by the trial court to the mother is a relatively modest $300 per month. We have carefully reviewed the record in this case as it pertains to the issue of the award of alimony to the mother. Given the financial abilities and needs of the parties as they have developed since the divorce judgment was entered, as well as the lifestyle and status of the mother before and since the divorce, we cannot conclude that the trial court was plainly and palpably wrong in modifying its previous judgment so as to award $300 per month in alimony to the mother.

IV. Conclusion

Those portions of the trial court's judgment (1) awarding educational support for both sons (including requiring the father to pay the cost of tuition, books, and fees associated with the younger son's education during his minority), (2) requiring the father to maintain health insurance for the benefit of the sons while they are attending college, (3) ordering the father to pay monthly child support of $464 for the benefit of the parties' younger son, and (4) awarding the mother alimony in the amount of $300 per month are affirmed. Those portions of the trial court's judgment limiting the father's postminority-support obligation to a "reasonable period" and requiring the father to pay room and board costs when no such costs are actually expended are reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, J., concurs.
PITTMAN, J., concurs in part and concurs in the result in part, with writing.
YATES, P.J., concurs in part and dissents in part, with writing, which Thompson, J., joins.
PITTMAN, Judge, concurring in part and concurring in the result in part.
As to Part I.B. of the main opinion, which holds that a trial court's limitation of postminority educational support to a "reasonable period of time" is not proper, I concur in the result. As to the remainder of the main opinion, I concur. However, in my view, the treatment of the issue of postminority health-insurance expenses in Part I.E. of the main opinion warrants comment.
In deciding Ex parte Bayliss, 550 So.2d 986 (Ala.1989), the Alabama Supreme Court, for the first time, held that "a trial court may award sums of money out of the property and income of either or both parents for the post-minority education of a child of that dissolved marriage." 550 So.2d at 987 (emphasis added). However, because of the Legislature's mandate in § 12-3-10, Ala.Code 1975, that appeals from circuit-court judgments in domestic-relations cases be taken to this court, it *1289 has generally devolved upon the members of this court to decide what the outer limits of what an expense of "postminority education" might be. In doing so, this court very early espoused the principle that "postminority education" expenses within the scope of Bayliss, rather than being limited to solely tuition and fees, encompassed "the reasonable necessaries, including room and board, for [a] child to attend college." Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990) (emphasis added).
Part I.E. of the main opinion overrules certain cases decided by this court that stand for the proposition that health-insurance and health-care costs incurred by a child who has reached the age of majority, or by a parent on behalf of that child, are not within the scope of the "postminority education" expenses envisioned by Bayliss. It is significant that before today no majority opinion of this court or of the Alabama Supreme Court had ever held that such expenses were within the proper scope of Bayliss. Payne v. Williams, 678 So.2d 1118 (Ala.Civ.App.1996), as the main opinion notes, was a plurality opinion, and that portion of Smith v. Smith, 836 So.2d 893, 897 (Ala.Civ.App.2002), that "not[ed]" the decision in Payne was merely dicta.
I am not convinced that the cases we are overruling today were wrongly decided. Each of them derives support from a principled view that a parent or guardian's legal obligations to his or her child (as opposed to moral obligations) generally should end when that child reaches the age at which the Legislature deems that child to be sui juris. The holdings of Bayliss and Ex parte Brewington, 445 So.2d 294 (Ala.1983) (which pertains to postminority support for disabled adult children), are said to represent exceptions to that general rule. See Ex parte Cohen, 763 So.2d 253, 255 (Ala.1999). However, in the absence of a decision of the Alabama Supreme Court or action by the Legislature to the contrary, I agree that a child's health-insurance and health-care expenses may properly be viewed by a trial court, in an appropriate case, as being among the "reasonable necessaries" for that child to attend an institute of higher learning that this court envisioned in Thrasher as being an expense of "postminority education" within the scope of Bayliss.
YATES, Presiding Judge, concurring in part and dissenting in part.
Although I concur in the other portions of the main opinion and although I am sympathetic to the mother's desire to have the father provide health insurance for the parties' sons as part of their college education expenses, I believe that the trial court erred in requiring the father to provide such coverage. Therefore, I must respectfully dissent in that portion of the main opinion overruling McKnight v. McKnight, 888 So.2d 1251 (Ala.Civ.App. 2004); Amaro v. Amaro, 843 So.2d 787 (Ala.Civ.App.2002); Gage v. Cochran, 777 So.2d 720 (Ala.Civ.App.2000); Luce v. Luce, 681 So.2d 613 (Ala.Civ.App.1996); and Barnes v. State ex rel. Barnes, 653 So.2d 310 (Ala.Civ.App.1994), to the extent that those opinions reflect the view that health-related expenses are not properly includable as part of educational expenses under Ex parte Bayliss, 550 So.2d 986 (Ala.1989).
Section 30-3-1, Ala.Code 1975, provides, in pertinent part: "Upon granting a divorce, the court may give the custody and education of the children of the marriage to either father or mother, as may seem right and proper...."
Our supreme court in Ex parte Brewington, 445 So.2d 294, 296 (Ala.1983), expanded the definition of the word "children" in § 30-3-1 to include dependent children whose "dependency results from *1290 ... physical and/or mental disabilities that continue to render them incapable of self-support beyond minority." In expanding that definition, the supreme court "recognize[d] a duty imposed on parents to support their children who continue to be disabled beyond their minority." 445 So.2d at 297. In other words, the supreme court determined that dependency beyond the age of majority based on a physical and/or mental disability was an exception to the rule that "absent a statute or agreement, no common-law authority existed to impose upon a non-custodial parent the obligation to support his adult child." 445 So.2d at 296.
In Ex parte Bayliss, supra, our supreme court expanded the definition of children in § 30-3-1 and, accordingly,
"expand[ed] the exception to the general rule  i.e., the rule that a divorced, noncustodial parent has no duty to contribute to the support of his or her child after that child has reached the legislatively prescribed age of majority  beyond Brewington, supra (dealing with a physically or mentally disabled child) to include the college education exception."[7]
550 So.2d at 992.
Our supreme court has conferred jurisdiction upon the trial courts of Alabama to order postminority support for a physically or mentally disabled child who is unable to support themselves upon reaching the age of majority, and the court has also conferred jurisdiction upon the trial courts to order payment of college expenses where application for such expenses is made before the child reaches the age of majority. Our supreme court in Ex parte Bayliss held that "under § 30-3-1 courts have the right to assure that the children of divorced parents, who are minors at the time of the divorce, are given the same right to a college education before and after they reach the age of 19 years that they probably would have had if their parents had not divorced." 550 So.2d at 995. However, I cannot say that the supreme court intended to include health insurance as part of the right to a college education when the child is not disabled. I recognize that this court has included room, board, books, tuition, and necessary school fees as part of college expenses, see Bayliss v. Bayliss, 575 So.2d 1117 (Ala.Civ.App.1990), and Thompson v. Thompson, 689 So.2d 885 (Ala.Civ.App.1997); however, in my opinion, those educational expenses are directly related to attending college. To include health insurance, transportation costs, clothing, etc., as part of "educational expenses" *1291 would require the noncustodial parent to pay for general child support, and I do not believe that that was the intent of the educational-expenses exception created in Bayliss.
Also, I disagree with the main opinion's assertion that this court has been inconsistent in its treatment of health-related expenses as part of college education expenses. In Payne v. Williams, 678 So.2d 1118 (Ala.Civ.App.1996), the trial court ordered the father to pay postminority support in the amount of $700 per month for four years for the parties' 18-year-old daughter who wanted to attend college. The court also ordered that the father provide health-insurance coverage for the daughter or to secure replacement health insurance for as long as she qualified as a dependent. However, the trial court amended its order on the father's postjudgment motion, eliminating the father's obligation to cover the daughter under his health insurance. Accordingly, the issue of health insurance as part of college expenses was not at issue.[8] In Smith v. Smith, 836 So.2d 893 (Ala.Civ.App.2002), the trial court ordered that the husband maintain hospitalization, major medical, and dental insurance coverage on the parties' minor children so long as his group insurer allowed. The husband argued that if his health-insurance carrier allows for coverage for dependents beyond the age of majority, this provision of the divorce judgment would be reversible error. This court agreed, noting that there was no evidence that the condition had been met to include such coverage. Moreover, this court noted that the wife had not requested postminority support and that any request for support would premature because the children were not of college age.
THOMPSON, J., concurs.
NOTES
[1] The mother's total payments to both schools is the amount of reimbursement awarded by the trial court.
[2] Allowing a trial court to award postminority educational expenses in a manner that will require the parties to agree between themselves as to the specific duration of that award will invite future disputes and litigation over one of the very issues contemplated by the action that is already pending. Our trial courts routinely are required to determine the number of years in the future that rehabilitative alimony will be needed by one spouse and that the other spouse will be capable of paying that alimony. Indeed, our courts are routinely called upon in a wide variety of cases to assess the future duration of various conditions (e.g., the number of years a business will lose profits, or the number of years an employee will lose wages, because of tortious conduct by another) in order to award damages or other relief. If a trial court specifies at the time of it awards Bayliss support the number of years the noncustodial parent will be obligated to pay that support, but there subsequently develops a material change in the circumstances anticipated by the trial court in making that award, then, as in the case of alimony, either party may petition the court at that time for a modification of that award.
[3] Our holding today should not be construed as meaning that, in every case where a court requires a parent to assume any portion of the expenses related to a child's postsecondary education, it necessarily must include an award of the expenses associated with health insurance or health care. While, as noted below, requiring students to attend college on a full-time basis has become common in many so-called Bayliss orders, the availability of Bayliss-type relief enables a trial court to put a child in the same situation he or she would have been in had his or her parents not divorced. Accordingly, a trial court may well conclude that, in the absence of the divorce, the parents would have been unable to afford all of the expenses associated with their child's acquisition of a postsecondary education (i.e., that, in the absence of a divorce, the child would have had to procure moneys from some other source, such as scholarships, grants, working part-time, etc., in order to attend college). Nothing in our holding today prevents a trial court from refraining from awarding the costs of health care or medical insurance under such circumstances.
[4] In Payne, this court upheld an award of $8,400 per year in postminority-educational support from the noncustodial parent, notwithstanding the child's access to $40,000 in savings and the fact that her expenses, if limited to tuition, room, board, books, and fees, would be only $8,001 per year. The opinion supported this result by reasoning that "`[e]ducational expenses involve more than tuition and books; therefore, the trial court should also consider "evidence of the reasonable necessaries ... for the child to attend college." Thrasher[ v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990)].'" Payne v. Williams, 678 So.2d at 1121 (quoting Finley v. Finley, 648 So.2d 588, 591 (Ala.Civ.App. 1994) (Thigpen, J., concurring in the result), including Judge Thigpen's use of an ellipses as indicated)). Accordingly, the Payne court's analysis made it clear that it was upholding the award of $8,400 per year in postminority-educational support on the basis of expenses other than those for only tuition, room, board, books, and fees.
[5] In Amaro, this court also cited to earlier decisions in Self v. Self, 685 So.2d 732 (Ala. Civ.App.1996), and State ex rel. Hayes v. Hayes, 620 So.2d 49 (Ala.Civ.App.1993). Self and Hayes, however, were focused upon the issue of whether a noncustodial parent could be required to maintain health insurance on his or her adult children pursuant to the rule announced in Ex parte Brewington, 445 So.2d 294 (Ala.1983), which holds that an award of such support may be available to an adult child if that child is physically or mentally disabled. Those cases did not foreclose the option of awarding such support in an appropriate case as part of postminority educational support pursuant to Ex parte Bayliss.
[6] The father and his new wife enjoyed a joint household income for the years 1997 through 1999 of approximately $142,000, on average, and they have been able to afford the purchase of a 41-acre farm upon which they constructed a $180,000 house.
[7] I note that our supreme court in Ex parte Bayliss relied, in part, on its earlier case of Ogle v. Ogle, 275 Ala. 483, 156 So.2d 345 (1963), for the proposition that a parent may be required to contribute toward the college education of his minor child. Ogle was issued in 1963. In 1971, the Twenty-Sixth Amendment to the United States Constitution was adopted, reducing the voting age from 21 to 18. "Most states went beyond the requirements of the constitutional amendment, passing statutes which not only permitted eighteen-year-olds to vote, but reduced the age of majority to eighteen for most other purposes also." Katherine Conrey Horan, Postminority Support for College Education  A Legally Enforceable Obligation in Divorce Proceedings?, 20 Family L.Q. 589, 590 (1987) (footnote omitted). In 1975, the Alabama Legislature changed the age of majority from 21 to 19. § 26-1-1, Ala.Code 1975. The change impacted postminority educational support because, although a 21-year-old may be close to graduating, a 19-year-old is usually in his first or second year of college. Many state legislatures have adopted statutes authorizing courts to order payment of college expenses. See William V. Fabricius, Sanford L. Braver, Kindra Deneau, Divorced Parents' Financial Support of Their Children's College Expenses, 41 Family Ct. Rev. 224 (2003)(as of April 2003, 21 legislatures plus the District of Columbia have laws authorizing the payment of college expenses).
[8] The main opinion notes that Payne states that "`"[e]ducational expenses involve more than tuition and books; therefore, the trial court should also consider `"evidence on the reasonable necessaries[, including room and board,] for the child to attend college."' Thrasher [v. Wilburn, 574 So.2d 839, 841 (Ala. Civ.App.1990)].'" 678 So.2d at 1121 (quoting Judge Thigpen's special writing concurring in the result in Finley v. Finley, 648 So.2d 588, 591 (Ala.Civ.App.1994))." 904 So.2d at 1285. That portion of Payne refers to this court's discussion of the financial resources of the parties and the daughter's access to $40,000 in funds.