Jerry Wayne Gilliam ("the father") and Darlene Perkins Prater ("the mother") were divorced in 1985. One child was born of the marriage, a daughter born in October 1981.
In April 2000, the mother petitioned to modify the divorce judgment, to seek postminority educational support for the daughter. In her petition, the mother stated that the daughter would graduate from high school in May 2000 and that she planned to attend college at the University of South Alabama beginning in the fall of 2000. After a hearing, the trial court ordered the father to pay $11,200 per year toward the daughter's college-education expenses and to pay this amount at the rate of $933.33 per month. The college support was conditioned upon the following: The daughter shall be enrolled as a full-time student at an accredited two-year or four-year college beginning in the fall term of 2000; the daughter shall maintain an overall "C" average; and the support shall end when the daughter receives a bachelor's degree or reaches age 23, whichever occurs first.
The father appeals, contending that the support order was an abuse of the court's discretion because, he says, he is not financially able to pay $11,200 per year without incurring an undue hardship.
In Thompson v. Thompson, 689 So.2d 885, 887 (Ala.Civ.App. 1997), this court stated:
 "In order for a trial court to award post-minority educational support for a child of divorced parents, it `shall consider all relevant factors that shall appear reasonable and necessary, including primarily
the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education.' Ex parte Bayliss, 550 So.2d 986, 987 (Ala. 1989) (emphasis in original)."
In Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App. 1990), this court stated:
 "A parent has a legal duty to provide or aid in providing a college education for his/her child if the child demonstrates the ability and willingness to attain a higher education and the parent has sufficient estate, earning capacity, or income to provide financial assistance without undue hardship to himself. The use of the term `undue hardship' does not mean without any personal sacrifice. Most parents who send their children to college sacrifice to do so."
(Citations omitted.)
The trial court's order read:
"A. Resources of the Parents
 "1. The [mother] is employed by Weyerhaeuser Company and earns approximately $31,200.00 per year. . . .
 "2. The [father] is employed by Weyerhaeuser Company and earns approximately $69,327.00 per year. . . . Considering [the father's] Exhibit 2 detailing his expenses for himself, his wife, his two stepchildren, and his mother, the monthly total is $4,763.63, and his monthly gross income is $5,777.25. . . . Also, $596.64 included in the expense total is current child support for the [daughter] (the August 14, 1998, modification *Page 384 
decree calls for $592.64 per month). The court concludes that [the father] is financially able to contribute toward the college expenses for [the daughter]."
In Thrasher, 574 So.2d at 841, this court stated:
 "Where evidence is presented ore tenus, as in this instance, the trial court's judgment is presumed correct unless it is so unsupported by the evidence that it is plainly and palpably wrong. Furthermore, matters concerning child support are within the trial court's discretion and will be reversed only upon a showing that the trial court abused its discretion or that its determination is plainly and palpably wrong."
(Citations omitted.)
The record before us contains evidence to support the trial court's determination that the father is financially able to contribute to the daughter's college education expenses without incurring an undue hardship. We find no abuse of discretion in regard to that determination.
The father also contends that the trial court erred when it included rent, utilities (electric and water), transportation costs and personal costs in the amount that the court ordered him to pay. In its order, the trial court stated:
 "[The daughter] plans to reside off-campus with a cousin, who is also enrolled at said university, and share rent, utilities, and other expenses equally. The rent is $695.00, including television cable, per month; the electric bill averages $112.50 per month, and the water averages $50.00 per month. The total is $857.40, one-half of which is $428.75 per month or $5,145.00 per year. [The mother's] Exhibit 3 indicates that tuition and fees, books and supplies, student I.D., meals and transportation and personal costs will total $10,999.00 per year. The total costs amount to $16,144.00 per year."
In Thompson, 689 So.2d at 888-89, this court stated:
 "In Bayliss v. Bayliss, 575 So.2d 1117 (Ala.Civ.App. 1990) (Bayliss II), this court held that it was not an abuse of discretion for the trial court to order the father to pay an amount equivalent to room, board, books, tuition, and necessary fees at Auburn University, a public university, in the situation of a son attending a private college and with his father excluded from the son's college selection.
". . . .
 "Additionally, the trial court also ordered the father to pay $500 per month per daughter for `ordinary and necessary living expenses.' The father argues that the trial court erred in ordering him to pay the daughters a monthly allowance. In Bayliss II, this court affirmed the trial court's judgment ordering the father to pay the son's room, board, books, tuition, and necessary fees. Each of those expenses was directly related to the child's college education. . . .
 "After carefully reviewing the record, we conclude that the $500 per month awarded to each of the daughters was not directly related to the daughters' college educations, but included a clothing allowance, an entertainment allowance, and other such allowances. Consequently, the trial court erred in ordering the father to pay each of the daughters $500 per month for their `ordinary and necessary living expenses.'"
Thus, in light of the foregoing, we conclude that the trial court erred in including an amount for "personal costs" in the amount the father was ordered to pay, because such costs were not directly related *Page 385 
to the daughter's college education. We reverse the trial court's judgment and remand for a recalculation of the amount of the father's obligation to provide postminority educational support. The father's obligation should include only those expenses directly related to the daughter's college education.
Additionally, we note that the evidence indicated that if the daughter lived on campus and shared a dormitory room her cost would be between $637 and $825 per semester, which is much less than the $428.75 per month she will pay to live in an off campus apartment. The mother testified that she and the daughter did not consider on campus housing because the daughter desired to live off campus. Both the mother and the daughter admitted that they did not discuss any of this with the father. While we do not hold that the trial court abused its discretion in requiring the father to pay one-half the cost of rent and utilities for an off campus apartment, we also would not have found an abuse of discretion if it had required the father to pay an amount equivalent to one-half the cost of an on campus dormitory room, since that would be a less expensive alternative and the father was not consulted about the daughter's living arrangements. SeeBayliss, 575 So.2d 1117.
Although the trial court properly determined that the father can be required to contribute to his daughter's postminority education expenses, we must reverse the particular judgment the court entered.
REVERSED AND REMANDED.
Yates J., concurs.
Robertson, P.J., and Thompson, J., concur in the result.
Crawley, J., dissents.