989 So.2d 572 (2008)
John Scott WAGNER
v.
Joyce Keyton WAGNER.
2060372.
Court of Civil Appeals of Alabama.
February 15, 2008.
*575 William R. Blanchard, Montgomery, for appellant.
Banks T. Smith, Dothan, for appellee.
THOMAS, Judge.
John Scott Wagner ("the father") appeals from a judgment of the Houston Circuit Court denying his petition to modify his periodic-alimony obligation, increasing the amount of his monthly child-support payments to Joyce Keyton Wagner ("the mother") for the parties' younger child, and ordering the father to make payments for the postminority educational expenses of the parties' older child. We affirm.

Procedural History
The father and the mother were divorced on August 30, 1999. Pursuant to the divorce judgment, the mother was awarded custody of the parties' two children and the father was ordered to pay the mother $875 per month in child support and $350 per month in alimony. Soon thereafter, the father petitioned the trial court to modify his child-support payments due to his substantially decreased income. The trial court granted the father's petition on October 27, 1999, and reduced the father's monthly child-support obligation to $510 per month. Approximately five and a half years later, on March 27, 2006, the mother filed a petition to modify child support, seeking postminority educational support for the parties' older child, who was 18 years old at the time, and, based upon the father's income at the time, an increase in the amount of support for the benefit of the younger child, who was then 16 years old. Concurrent with the petition to modify child support, the mother also filed a contempt petition alleging that the father had failed to pay periodic alimony in accordance with the provisions of the divorce judgment. The father answered the mother's petitions, alleging that he was current with his alimony obligations, that he should not be responsible for postminority educational support for the older child, and that an increased amount of child support for the younger child was not warranted. The father also filed a counterpetition seeking to modify his periodic-alimony obligation.
On November 2, 2006, the trial court conducted a hearing on the parties' petitions, and on November 8, 2006, the court entered a judgment dismissing the mother's contempt petition, denying the father's counterpetition to modify alimony, and ordering the father to pay $793 per month in child support for the younger child. The judgment also ordered the father to pay 80% of the educational costs not covered by scholarships for the older child. After filing a postjudgment motion to alter, amend, or vacate the trial court's judgment, which was subsequently denied, the father timely appealed to this court.
The father raises the following issues on appeal: 1) whether the trial court erred in ordering him to pay increased child support for the younger child in the absence of proof that the child's needs had increased; 2) whether the trial court erred in ordering him to provide postminority educational support for the parties' older child; and 3) whether the trial court erred in denying his counterpetition seeking a *576 modification of his periodic-alimony obligation.

Facts
Both of the parties' children encountered serious and life-threatening health problems at a young age. The younger child was born with multiple birth defects, and the older child was diagnosed with acute lymphocytic leukemia. The debt accumulated as a result of the medical expenses associated with the treatment of the younger child resulted in the parties' declaring bankruptcy; at the time they declared bankruptcy, the parties' debt totaled approximately $1.6 million. The costs of the medical treatment required for the older child's leukemia further added to the parties' debt. The father testified that, during this time of financial struggle, the mother was not employed and earned no income to help support the family despite his requests that she do so.
After the parties separated in 1998, the mother and the two children moved in with the mother's parents in Dothan. The mother testified that her father paid the mortgage and utility expenses for the residence and that she did not assist in paying those expenses. After the divorce, the mother obtained employment; at the time of the trial in this matter, she was employed as a secretary at Southern Bone and Joint Specialists. She had been working there since 2001, and, at the time of trial, she earned approximately $2,088 per month.
At the time of the parties' divorce, the father was living in Brownsville, Texas, working at a grocery store and earning approximately $1,625 per month. The father testified that, shortly thereafter, the grocery store closed down and he went to work as a school teacher earning approximately $1,100 per month. The father admitted to accumulating child-support and alimony arrearages. He testified that he had been "broke" at the time and that he had sporadically sent what money he could. In 2002, the father moved to Minnesota to work with Eaton Corporation; he earned approximately $8,200 per month as a supply-chain manager for Eaton. The father made a couple of large payments in 2002 and 2003 to become current with his child-support and alimony obligations. The mother testified that she used the income from those large payments to enroll the younger child in Alabama's prepaid college tuition ("PACT") program and to purchase an automobile for the older child; the mother did not enroll the older child in the PACT program because the cutoff for enrolling her in the PACT program had already passed.
After the parties divorced, the father remarried in 1999. He has a daughter born of that marriage and a stepson from his current wife's previous relationship. The father testified that he also supports his sister-in-law's two children. At trial, the mother testified that she had not remarried.
In 2004, the father moved back to Texas and began working with Lonestar Steel Company as a supply-chain manager. At the time of trial, the father was earning an annual salary of approximately $96,000, or $8,000 per month, and he resided in Longview, Texas. The father testified that he jointly owned a house with his current wife, and he claimed that they had $50,000 equity in the house, with a current mortgage of $2,791 per month. The father testified that, had he remained married to the mother, he would not have had the opportunity to advance in his career.
At the time of trial, the older child had graduated from high school and was attending Mississippi College, a private college, as a full-time student. The mother testified that the older child was planning to earn a degree in ministerial studies and *577 wanted to become a youth counselor after she graduated. The mother also testified that the older child had performed well in school and had been awarded several scholarships to attend Mississippi College. According to the mother's testimony, the older child had also considered attending Auburn University. However, the mother testified that Auburn did not offer the type of undergraduate degree that the older child is seeking and that the older child would have to spend an extra year of study at Auburn to get a master's degree in order to obtain a marketable degree in her chosen field. The mother testified that, according to her calculations, the cost of the older child's attending Mississippi College and obtaining a degree in ministerial studies would be less expensive than the cost of the older child's attending Auburn and obtaining a master's degree in a comparable field. The mother testified that it would take the older child only four years to complete her degree in her chosen field of study at Mississippi College and that it would take the older child five years to complete a master's degree in a comparable field of study at Auburn. Additionally, the mother presented exhibits comparing the estimated cost of attending Mississippi College with the estimated cost of attending Auburn. The exhibits showed that the cost of tuition for an Alabama resident, such as the older child, to attend Auburn was approximately half the cost of tuition for the older child to attend Mississippi College. However, the mother's exhibits indicated that the total estimated cost of the older child's attending Auburn as a full-time student for the 2006-2007 academic school year, including other costs such as room and board, books, and transportation costs, was $17,998. According to the mother's calculations, the total estimated cost of the older child's attending Mississippi College for the 2006-2007 academic school year, after deducting the scholarships the child received, was $16,060.
Although the mother and the father both have college degrees, the father testified that if the parties had remained married he would not have been able to afford to contribute to the older child's college education. The father also testified that neither the mother nor the older child had consulted him when making the decision to attend Mississippi College and that contributing to the educational expenses of the older child's attending Mississippi College would unduly burden his ability to provide for the children he is currently supporting. The father did admit, however, that he wanted all of his children to have the best education possible and that he could contribute some money toward the older child's college expenses.

Standard of Review
It is well settled in Alabama that a trial court's determinations on matters of child support and alimony are committed to its sound discretion and will not be reversed unless they are so unsupported by the evidence as to be plainly and palpably wrong. Further, when evidence is presented ore tenus, the trial court's judgment based on that evidence is presumed correct. See Ex parte Ederer, 900 So.2d 424, 426 (Ala.2004); Allen v. Allen, 966 So.2d 929, 931-32 (Ala.Civ.App.2007); and Posey v. Posey, 634 So.2d 571, 572 (Ala. Civ.App.1994).

Analysis

I.
The father first asserts that the mother did not prove a change of circumstances that would warrant an increase in his child-support payments for the parties' younger child. In support of his assertion, the father claims that a child-support modification is not proper when it is predicated only upon a parent's increased income and *578 not upon any evidence demonstrating that the child's needs have also increased. He then points out that the mother offered no evidence indicating that the younger child's needs had increased and that the mother based her request to modify child support solely on the fact that the father's income had increased.
Although the combined incomes of the father and the mother exceed the uppermost limit of the Rule 32, Ala. R. Jud. Admin., child-support-guidelines schedule,[1] thus rendering the child-support guidelines inapplicable, see Arnold v. Arnold, 977 So.2d 501, 505-07 (Ala.Civ.App.2007), it is clear that the trial court applied the child-support guidelines,[2] and the father does not challenge the trial court's application of the Rule 32 child-support schedule in determining the father's child-support obligation. Therefore, that issue is waived. See C.M. v. B.S.L., 906 So.2d 204, 206 (Ala.Civ.App.2005) (when a parent failed to argue on appeal that the trial court should not have applied the Rule 32 child-support guidelines, that issue was waived).
Generally, a child-support award may be modified only when the party seeking the modification has carried his or her burden of proof that changed circumstances warrant such a modification based on the needs of the child and the ability of the payor parent to respond to those needs. See Allen, 966 So.2d at 932; and Coleman v. Coleman, 648 So.2d 605, 606 (Ala.Civ.App.1994). "The most pertinent factor in determining a modification of child support is a material change in the needs, conditions, and circumstances of the children." Whitfield v. Whitfield, 570 So.2d 700, 703 (Ala.Civ.App.1990). Thus, a trial court's determination that changed circumstances warrant a modification of a parent's child-support obligation must be based upon evidence of "the increased needs of the child coupled with the parent's ability to pay." Cassick v. Morgan, 628 So.2d 862, 864 (Ala.Civ.App.1993)(emphasis added).
However, Rule 32(A)(3)(b), Ala. R. Jud. Admin., establishes a rebuttable presumption that child support should be modified when a parent's current income has increased or decreased in an amount that would create a variation from the existing child-support obligation of more than 10% under the Rule 32 child-support guidelines. See Scott v. State ex rel. Dix, 963 So.2d 674 (Ala.Civ.App.2007). Rule 32(A)(3)(b) provides:
"There shall be a rebuttable presumption that child support should be modified when the difference between the existing child support award and the amount determined by application of these guidelines varies more than ten percent (10%), unless the variation is due to the fact that the existing child support award resulted from a rebuttal of the guidelines and there has been no change in the circumstances that resulted in the rebuttal of the guidelines."
(Emphasis added.) If the Rule 32(A)(3)(b) presumption applies in a case, the party *579 contesting the proposed modification carries the burden to rebut the presumption that child support should be modified by proving that applying the Rule 32 child-support guidelines would be "manifestly unjust or inequitable." Scott, 963 So.2d at 675 (citing Ex parte Moore, 805 So.2d 715, 720 (Ala.2001)). If the presumption does not apply, then the trial court must determine whether to modify child support based upon a change of circumstances. Scott, 963 So.2d at 675 (citing Williams v. Braddy, 689 So.2d 154, 156-57 (Ala.Civ. App.1996)).
The father's previous child-support obligation for both children totaled $510 per month. The trial court increased the father's child-support obligation to $793 per month, which applied only to the support of the younger child. This variation is well above the 10% threshold required by Rule 32(A)(3)(b) for the presumption to apply. As previously mentioned, the father does not argue that the Rule 32 child-support guidelines should not have been used; rather, his contention is that the mother did not present evidence of changed circumstances that would warrant an increase in child support because the mother presented no evidence of the younger child's increased needs. Although the father cites a number of this court's cases to support this contention, including Posey, supra; Cassick, supra; Osborn v. Osborn, 628 So.2d 785 (Ala.Civ.App.1993); Cox v. Cox, 591 So.2d 90 (Ala.Civ.App.1991); and Whitfield, supra, all of those cases involved child-support awards that had been determined by the trial court before the rebuttable presumption in Rule 32 became effective on October 4, 1993. See Comment, Rule 32, Ala. R. Jud. Admin. Thus, in this case, the rebuttable presumption applied to the trial court's child-support award and the father had the burden of proving that the child-support modification would be "manifestly unjust or inequitable." Scott, supra.
The father presented no evidence indicating that a modification of his child-support obligation for the younger child would be "manifestly unjust or inequitable," although he asserted that additional income should be imputed to the mother because the mother and the children had been living with the children's maternal grandparents since the parties had separated in 1998 and the grandparents had paid the mortgage and utility expenses for the residence. Therefore, we cannot hold that the trial court erred in its modification of the father's child-support obligation because the father did not rebut the Rule 32 presumption with evidence demonstrating that the modification would be "manifestly unjust or inequitable." See Scott, supra; and Allen, supra.

II.
The father next asserts that the trial court erred in ordering him to make payments for the postminority educational expenses of the parties' older child. The father claims that the trial court's determination was contrary to the factors set forth in Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), and other pertinent caselaw regarding postminority educational support. We disagree.
In Ex parte Bayliss, the Alabama Supreme Court held that, in determining whether to award postminority educational support, a trial court "shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education." 550 So.2d at 987. The court then held that the trial court may also consider "the standard of living that the child would have enjoyed if the marriage had not been dissolved *580 and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance." Id. Additionally, this court has held that the trial court "must also determine if the noncustodial parent has `sufficient estate, earning capacity, or income to provide financial assistance without undue hardship'" and that "[u]ndue hardship does not imply the absence of personal sacrifice, because many parents sacrifice to send their children to college." Penney v. Penney, 785 So.2d 376, 379 (Ala. Civ.App.2000) (quoting Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App. 1990)).
Given the ore tenus presumption afforded to the trial court's decision in this case, we cannot hold that the trial court's award of postminority educational support was plainly or palpably wrong. See Allen, 966 So.2d at 931-32. The parties did not dispute the older child's commitment to, or aptitude for, college. She had performed well in school, had obtained academic scholarships, and, by the time of trial, had already begun attending classes at Mississippi College as a full-time student. Further, although the father generally asserted in testimony that contributing substantial funds toward the older child's postminority education would impair his ability to provide the children he is currently supporting with finances for a college education, the father presented no evidence indicating that he would, in fact, face an "undue" hardship by being obligated to provide the court-ordered financial assistance for the older child's postminority educational support. See Penney, supra. The record clearly indicates that the parties struggled financially while they were married and that the father struggled financially in the years immediately following the parties' divorce. However, the record also indicates that, at the time of trial, the father was financially stable. At the time of trial, the father was earning a substantial income of approximately $8,000 per month and had approximately $50,000 in equity in his residence.
The trial court also considered what the parties' standard of living would likely have been if they had not divorced and whether the older child would have had the opportunity to pursue a college education with the parents' financial assistance. The trial court determined that the mother and the father would have financially contributed and encouraged their child to attend college. The father argues that, when the parties were married, the family barely survived and was ridden with bankruptcy debt from the children's illnesses; that the mother did not work or contribute financially towards the family; and that, if the parties had remained married, he would not have been able to better himself financially, much less afford to make college-education payments for the older child. Again, however, we cannot hold that the trial court exceeded its discretion in ordering the father to provide postminority educational support for the older child. Both the mother and the father had obtained a college education; most of the parties' financial hardships during their marriage were due to the children's serious, but temporary, health problems; and the father presented no evidence, other than his speculation, indicating that the mother would not have later obtained employment if the parties had remained married.
The father contends that the trial court erred by including costs for various "living expenses," including transportation costs and automobile maintenance, in its postminority educational support award. The father also claimed that the mother was seeking reimbursement for the purchase *581 of the older child's automobile, which had already been purchased using funds from child-support and alimony payments made by the father. However, we hold that the father misinterpreted the testimony and expense requests presented by the mother. There was nothing in the mother's testimony or expense-calculation exhibits to indicate that the requested support was intended to cover the costs of purchasing the automobile, rather than to cover the costs of maintenance and upkeep on the automobile. The testimony was clear and undisputed that the mother had already purchased the automobile for the older child's use out of funds from the father's child-support and alimony payments. Therefore, we will only consider the father's contention that an inclusion of expenses related to the automobile in the trial court's postminority educational support award was erroneous insofar as those expenses are in personal or living expenses that, the father claims, should not be included in a postminority support award.
The father cites Winsett v. Woodward, 856 So.2d 844 (Ala.Civ.App.2002), and Gilliam v. Prater, 785 So.2d 382 (Ala.Civ.App. 2000), for the proposition that personal expenses, including automobile and transportation costs and household expenses, are not included within "reasonable and necessary" educational expenses under Ex parte Bayliss. However, neither Winsett nor Gilliam, both plurality opinions, stand for the proposition that expenses not directly related to postminority educational costs cannot be included in a postminority educational support award under Ex parte Bayliss. In Winsett, this court held that when the trial court's order specifically required the father to pay only for his children's "`higher education costs, expenses and fees,'" the father was not required to pay for additional expenses  such as rent, automobile expenses, or personal living expenses  because such expenses are not necessarily included in "`higher education costs, expenses and fees,'" 856 So.2d at 847. In Gilliam, this court held that Ex parte Bayliss did not require a father to contribute toward the personal costs related to his daughter's postminority education when those costs were calculated to include the higher costs of off-campus residency and utilities, including cable television.
In Waddell v. Waddell, 904 So.2d 1275 (Ala.Civ.App.2004), a majority of this court upheld a trial court's judgment ordering a father to pay health-insurance costs as a part of a postminority educational support award under Ex parte Bayliss. The court reasoned that, in some cases, health insurance might be just as necessary as other educational expenses, such as room and board, "to enable children of divorced parents to devote themselves to the pursuit of college educations." Waddell, 904 So.2d at 1283. The court further noted that, under the analysis in Ex parte Bayliss, "`"[e]ducational expenses involve more than tuition and books; therefore, the trial court should also consider `evidence on the reasonable necessaries ... for the child to attend college.' Thrasher [v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990)]."'" Waddell, 904 So.2d at 1285 (quoting Payne v. Williams, 678 So.2d 1118, 1121 (Ala.Civ. App.1996), quoting in turn Finley v. Finley, 648 So.2d 588, 591 (Ala.Civ.App.1994) (Thigpen, J., concurring in the result)). Additionally, in Stinson v. Stinson, 729 So.2d 864, 868 (Ala.Civ.App.1998), this court upheld a judgment ordering the father to pay telephone expenses and "additional living expenses" over and above the cost of tuition, room, board, books, and supplies.
Thus, contrary to the father's assertion, we hold that postminority educational support may include more than *582 the costs of tuition and books, and may include other expenses that the trial court, acting within its discretion, determines to be reasonably necessary for the child to attend college. See Waddell, 904 So.2d at 1285; see also Ex parte Bayliss, supra; Thrasher, supra; and Payne, supra. In light of this determination, we further hold that the trial court did not commit plain or palpable error by incorporating monthly allotments for various automobile and personal expenses in its postminority educational support award, which included $227.50 per month for automobile insurance, fuel, and maintenance; $150 per month for food in addition to the meal plan provided by the college; $60 per month for toiletries; and $8.75 per month for the student health and recreation center. From the evidence contained in the record, we conclude that a reasonable fact finder could have determined that these expenses were reasonably necessary for the parties' older child to attend Mississippi College. See Ex parte Bayliss, supra; Waddell, supra; and Allen, supra.
Lastly, the father contends that the trial court erred in concluding that the cost of the older child's attending Mississippi College as a full-time student was "reasonably comparable" to the cost of her attending an in-state institution  namely, Auburn University. We, again, disagree because there was evidence in the record to support the trial court's determination. The mother presented evidence indicating that the estimated cost of a full-time student to attend Auburn and to reside on campus was approximately $17,998 a year and that the estimated cost for the older child to attend Mississippi College was approximately $16,060 a year, after taking the child's scholarships into consideration. Furthermore, the mother testified that the older child was seeking a degree in ministerial studies, which would take approximately four years to complete at Mississippi College; however, she testified that it would take the older child five years to obtain a master's degree in a comparable field at Auburn.

III.
Finally, the father asserts that the trial court erred by denying his counterpetition to modify his periodic-alimony obligation. The father claims that the mother's current employment and income, combined with the undisputed fact that the mother and the younger child live with the maternal grandparents and do not have to make any rent or utility payments, represent a material change of circumstances that warranted a modification of alimony.
The determination regarding whether to modify  or terminate  alimony falls within the discretion of the trial court. See Posey, supra. Thus, the trial court may, in its discretion, determine that a modification of alimony is warranted upon a showing of materially changed circumstances. However, "[e]ven if a change of circumstances is shown, the trial court is not required to grant the modification." Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala.Civ.App.1995)(citing Mullins v. Mullins, 475 So.2d 578 (Ala.Civ.App.1985)). Factors for the trial court's consideration may include the estate and earning capacity of each spouse, the recipient spouse's needs, and the payor spouse's ability to meet those needs. Posey, 634 So.2d at 572-73.
We conclude that the trial court did not exceed its discretion in refusing to reduce or terminate the father's alimony obligation. Although, at the time of trial, the mother was earning a modest income and was able to live with her parents without having to pay rent or utility expenses, the mother was still responsible for herself *583 and the management, care, and upbringing of the parties' younger child, who also resided with the mother's parents. The mother was also contributing to the college education and support of the parties' older child. Furthermore, the father's income and estate were well above that of the mother's income and estate and the father presented no evidence indicating that he did not have the means to continue making alimony payments pursuant to the divorce judgment. Compare Mullins v. Mullins, supra (holding that a trial court erred by refusing to modify alimony when the recipient spouse's income and estate surpassed that of the payor spouse, even though the payor spouse had the financial resources to continue paying the alimony set by the divorce judgment).

Conclusion
For the aforementioned reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, J., concur.
BRYAN, J., concurs in the result, without writing.
MOORE, J., concurs in part and dissents in part, with writing.
MOORE, Judge, concurring in part and dissenting in part.
Although I concur in the main opinion insofar as it affirms the trial court's award of postminority educational and its denial of the father's counterpetition for modification of his alimony obligation, I respectfully dissent from the affirmance of the trial court's modification of the father's child-support obligation.
In Posey v. Posey, 634 So.2d 571 (Ala. Civ.App.1994), this court stated:
"A trial court's discretion regarding child support when the parent's income exceeds the uppermost level of the schedule found in Rule 32, Ala. R. Jud. Admin., is not unbridled. The support ordered `must relate to the reasonable and necessary needs of the child[ren].' Anonymous v. Anonymous, 617 So.2d 694, 696 (Ala.Civ.App.1993). There is absolutely no evidence in the record suggesting or relating to any material change in the needs, conditions, and circumstances of the children. Although the father's salary indicates an ability to pay higher child support, there is no evidence of any increased needs of the children. The trial court abused its discretion in increasing the father's child support obligation, and its judgment is not supported by record evidence."
634 So.2d at 572.
In the present case, there is similarly no evidence of any increased needs of the younger child, only evidence that the father's salary had increased.[3] Therefore, as the father correctly argues, the mother failed to show that a material change of circumstances had occurred that would allow the trial court to modify the award of child support. Because the trial court had no authority to modify the award of child support, we do not need to reach the issue whether the trial court correctly calculated the father's new child-support obligation. Thus the father's failure to argue that the trial court incorrectly calculated his new child-support obligation is irrelevant.
I, therefore, respectfully dissent from the main opinion's affirmance of the trial *584 court's judgment insofar as it modifies the father's child-support obligation.
NOTES
[1] Based on the evidence presented to it, the trial court determined the parties' current incomes to be $8,000 per month for the father and $2,088 per month for the mother. Neither party disputes those determinations. Thus, the parties' combined monthly income equaled $10,088, which exceeds the $10,000 limit in the Rule 32 child-support-guidelines schedule. See Appendix, Rule 32, Ala. R. Jud. Admin.
[2] The trial court's judgment states:

"Child support for the parties' remaining child shall be adjusted in accordance with Rule 32 Child Support Guidelines based on the income evidence submitted by the parties and testimony related to the cost of obtaining health insurance...."
[3] In the present case, the parties' income exceeded the uppermost limit of the Rule 32, Ala. R. Jud. Admin., child-support-guidelines schedule. Accordingly, the presumption set forth in Rule 32(A)(3)(b) is inapplicable.