34 So.3d 677 (2009)
Steven M. STANFORD
v.
Kelly G. STANFORD.
2070605.
Court of Civil Appeals of Alabama.
March 20, 2009.
Certiorari Denied October 9, 2009. Alabama Supreme Court 1080794.
*678 W. Gregory Hughes, Mobile, for appellant.
Submitted on appellant's brief only.
PITTMAN, Judge.
Steven M. Stanford ("the former husband") appeals from a judgment modifying a judgment divorcing him from Kelly G. Stanford ("the former wife").
The former husband and the former wife were divorced by a judgment entered on April 17, 2003. In that judgment, among other things, the former wife was awarded physical custody of the parties' child, the former husband was ordered to pay child support in the amount of $607 per month, and the former husband was ordered to pay the former wife rehabilitative periodic alimony in the amount of $750 per month beginning in April 2003 and ending in April 2006. The divorce judgment also contained the following language: "Thereafter, the Court reserves the right to award periodic alimony."
In June 2006, the former wife filed a motion to modify the divorce judgment, in which she alleged that a material change in circumstances had occurred; she sought an increase in child support and an award of periodic alimony to assist her in completing her undergraduate college education.
The trial court conducted an ore tenus proceeding on February 19, 2008. During that proceeding, the former wife testified that following the divorce she had attempted to find meaningful employment but that, possessing only a high-school diploma and no professional work experience at that time, she had been forced to accept a minimum-wage job at a discount store. She stated that she had continued to apply for numerous positions until she was hired by the Mobile County school system as a substitute teacher. The former wife testified that during 2003 and 2004 she had worked at both jobsat various schools during the day and at the store at night and on the weekendsuntil she was able to afford to go back to college in the summer of 2004. The former wife testified that she had begun attending classes to earn 60 hours of college credit so that she could qualify to be hired by the school system as a teacher's aide. In the fall of 2006, having taken enough classes to reach 60 hours, the former wife was hired by the school system as a teacher's aide, earning *679 $11.23 per hour; unlike her substitute-teaching position, the new job included medical and retirement benefits. The former wife stated that, by the time of trial, she was working full-time with special-needs children in the Mobile County school system and earning $13.06 an hour.
The former wife testified that her monthly expenses averaged $1,900 per month. She stated that her monthly net salary from the school system was $1,096 and that that salary, even when combined with the monthly child-support payment of $607, did not suffice to pay all of her monthly bills. The former wife noted that since the rehabilitative alimony had ended in April 2006 she had been able to meet her monthly obligations only by using money from her student loans. The former wife asked the trial court to award her periodic alimony to allow her to complete her education without losing the house where she and the parties' minor child had been living since the divorce. She stated that she expected to graduate in either the spring or the summer of 2010 with an undergraduate degree in education.
The former husband testified that he believed that the former wife should have been able to get a "decent" job during the three years that she received rehabilitative alimony. He insisted that he did not want to pay any more alimony to the former wife, although he stated that he was willing to continue to pay the $607 in monthly child support. The former husband also testified that he had made approximately $64,000 a year at the time of the divorce and that he had earned $61,800 the year immediately preceding the trial because his company had been purchased and salaries there had been reduced. The former husband requested that the trial court deny the former wife's request for additional child support and alimony.
On February 21, 2008, the trial court entered a judgment modifying the divorce judgment. The trial court stated, in part:
"1. With respect to the remaining issue left for the Court, the Court ... does order the [former husband] to pay the [former wife] $300 per month as temporary periodic alimony until May 2010.
2. The Court does note that it is an extreme remedy for the Court to enlarge the temporary periodic alimony; however, in this case the Court does find that [the former wife] is working and going to school and is trying very hard to better herself which should benefit their child in the long run. The [former husband]'s assistance will help the [former wife] not have to go into as much debt to improve her life situation. This periodic alimony will be required so long as the [former wife] takes at least six credit hours per semester and shall begin February 2008 and end May 2010."
The former husband filed this timely appeal and asserts that the trial court acted outside its discretion in ordering him to pay periodic alimony after the specified three years for paying rehabilitative alimony had ended. The former husband relies primarily on Banks v. Banks, 336 So.2d 1365 (Ala.Civ.App.1976), and its progeny to support his contention that the former wife's failure to request a modification of her rehabilitative-alimony award before that award terminated is a permanent bar an award of alimony in the future. We conclude that the former husband misapprehends the applicable rule of law.
Alabama law is well settled that when a trial court fails either to grant or to reserve the issue of periodic alimony in a divorce judgment, its power to grant periodic alimony in the future is lost. See Tibbetts v. Tibbetts, 762 So.2d 856, 858 *680 (Ala.Civ.App.1999). In addition, "`[i]f a grant of periodic alimony expires according to its term or is terminated by an order of modification, without reservation by the court, it is not subject to revival or reinstatement.'" Tibbetts, 762 So.2d at 858 (quoting Gargis v. Gargis, 367 So.2d 476, 478 (Ala.Civ.App.1978)) (emphasis added). The cases cited by the former husband all concern judgments that contained awards of rehabilitative alimony and contained no language reserving the issue of future periodic alimony.
Recently, this court reversed a divorce judgment awarding rehabilitative alimony but failing to reserve the issue of future periodic alimony; we stated, in part:
"`We have previously held that when the court awards rehabilitative alimony based on the earning ability of the parties, their probable future prospects, and the length of the marriage, it is reversible error for the court not to reserve the right to award periodic alimony in the future. See Robinson v. Robinson, 623 So.2d 300 (Ala.Civ.App.1993); Sammons v. Sammons, 598 So.2d 941 (Ala. Civ.App.1992).'"
Giardina v. Giardina, 987 So.2d 606, 620 (Ala.Civ.App.2008) (quoting Fowler v. Fowler, 773 So.2d 491, 495 (Ala.Civ.App. 2000), overruled on other grounds by J.L. v. A.Y., 844 So.2d 1221 (Ala.Civ.App.2002)); see also McLendon v. McLendon, 420 So.2d 266, 268 (Ala.Civ.App.1982) (when divorce judgment reserved right to award periodic alimony, trial court retained jurisdiction to make such award at later date). Although the parties' divorce judgment contains language establishing a rehabilitative-alimony obligation for only three years, it also expressly includes a reservation of the issue of periodic alimony. Because that judgment contained a reservation of the issue, we conclude that the trial court could properly entertain the former wife's modification request.
The general rule "is that future periodic alimony awards may be modified upon showing a change in circumstances." Gargis, 367 So.2d at 478; see also Dutton v. Dutton, 490 So.2d 1249, 1251 (Ala.Civ. App.1986). At trial, the former wife testified that after she had stopped receiving the rehabilitative-alimony award she had been unable to meet her monthly financial obligations. She asked the trial court to award her enough monthly periodic alimony to allow her to complete her undergraduate degree and become self-sufficient. We cannot say that the trial court erred in granting the former wife's request.
The former husband also asserts that the erred in entering the modification judgment because, he says, the trial court's use of the word "temporary" intimates that the award of $300 in monthly periodic alimony is merely an "extension" of the former rehabilitative-alimony award that had already terminated in April 2006. We do not agree with the former husband that the trial court intended to improperly "extend" the previous award. During the trial in this matter, the trial court and the former husband's attorney had a lengthy discussion concerning the applicability of Banks to this case. The trial court noted on the record that the reservation of the issue of future periodic alimony in the divorce judgment not only gave the court jurisdiction over the issue but also empowered the court to consider a change in circumstances and to award whatever amount might be shown to be appropriate based on the evidence adduced in a modification hearing. See Crenshaw v. Crenshaw, 816 So.2d 1046, 1047-1048 (Ala.Civ. App.2001) (noting that a judgment reserving periodic alimony is actually an immediate denial of alimony at time judgment is entered and stating that courts may properly *681 reserve issue of alimony if facts indicate that future circumstances may entitle a party to such an award).
Alabama law is well settled that the modification of periodic alimony is a matter within the discretion of the trial court, and on appeal a trial court's judgment on that matter is presumed correct. Posey v. Posey, 634 So.2d 571, 572 (Ala. Civ.App.1994). A trial court may modify an award of periodic alimony upon proof that a material change of circumstances has occurred since the last award was made. Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala.Civ.App.1995). "The trial court may consider several factors, including the earning capacity of each spouse, the recipient's needs and the payor's ability to meet those needs, and the estate of each spouse." Id.
At the time the parties were divorced, the former wife, unlike the former husband, had not been in the workforce and had no record of earnings, a fact that no doubt colored the trial court's decision to grant three years of rehabilitative alimony and to reserve judgment on the issue of periodic alimony. Although the former husband's income is marginally less than it was at the time of the divorce, it still exceeds $60,000 per year. In contrast, although the former wife now has a record of earnings, those earnings have yet to exceed $20,000 per year. Moreover, the former wife testified that she had incurred a debt of $30,000 in student loans and had been unable to meet her monthly financial obligations since the termination of the rehabilitative-alimony payments.
Although the former husband contends that the former wife has actually improved her financial position since the parties divorced, at trial the former wife itemized her monthly income and expenses and offered evidence tending to show a monthly shortfall of approximately $200. Based upon the record evidence, we conclude that the trial court could properly determine that the former wife had proven a change in circumstances entitling her to an award of monthly periodic alimony, irrespective of the court's use of the word "temporary" in the judgment. See McLendon and Kiefer, supra; see also Wagner v. Wagner, 989 So.2d 572, 583 (Ala.Civ.App.2008). The trial court's judgment is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and THOMAS, J., concur.
BRYAN, J., concurs in the result, without writing.
MOORE, J., dissents, with writing.
MOORE, Judge, dissenting.
I respectfully dissent from the main opinion's affirmance of the trial court's judgment.
The original divorce judgment, which was entered on April 17, 2003, provided, in pertinent part:
"14. [The former husband] shall pay the [former wife] rehabilitative periodic alimony of $750.00 per month beginning April, 2003 for a period of 3 years. Thereafter, the Court reserves the right to award periodic alimony....
"15. ... [The former wife] is encouraged to find employment. In the event, the [former wife] gets employment and earns under $30,000 per year, the rehabilitative alimony provision will not be reduced due to her employment wages under $30,000 per year...."
In the former wife's motion to modify the 2003 divorce judgment, she alleged that she was currently enrolled as a sophomore at the University of South Alabama, that she was pursuing a teaching degree *682 while working as a full-time substitute teacher in the Mobile County Public School System, and that she would need approximately three more years to complete her degree through night classes. The former wife stated that she "is in need of continued periodic alimony in order to complete her schooling to become gainfully employed." Therefore, she requested that the trial court enter an order modifying the alimony provisions of the 2003 divorce judgment to provide that her "alimony be continued until such time as she can complete her studies and receive her diploma...."
At the outset of the trial of this cause, the attorney for the former wife indicated that the parties had resolved all the issues raised in the former wife's motion except "the remaining issue ... on the extension of rehabilitative alimony." After reading paragraphs 14 and 15 of the 2003 divorce judgment, the former wife's counsel then stated that "[t]he issue I think today for the Court to decide is does the $750 a month continue because we would proffer that she[, the former wife,] still makes less than $30,000."[1] The former husband's counsel responded that, under Banks v. Banks, 336 So.2d 1365, 1367 (Ala.Civ.App. 1976), a rehabilitative-alimony provision that terminates on a specified date can be modified only if the movant files a petition to modify that provision before its termination date and that, because the former wife had failed to file her modification petition before April 17, 2006, the trial court had no jurisdiction to extend her rehabilitative alimony. After considering those arguments, the trial court noted that, unlike the judgment at issue in Banks, the 2003 divorce judgment specifically reserved jurisdiction to award periodic alimony, and it stated: "I can award periodic alimony in the future based on that reservation alone ...." The trial court then took testimony regarding the issue of "why should I give additional periodic alimony?"
That testimony established that, at the time of the entry of the 2003 judgment, the former wife had attained less than a year of college credits and was not employed, although she had learned secretarial skills and had previously worked at Spring Hill College. The former wife became employed in May 2003 as a retail cashier earning $6 per hour and working 25 to 35 hours per week. Thereafter, the former wife also began working part-time as a substitute teacher, earning $40 per day without fringe benefits, while also working her cashier job at nights and on weekends.[2] In the summer of 2004, the former wife returned to college, first enrolling at Bishop State Community College, then at Spring Hill College, and, finally, in the fall of 2005, at the University of South Alabama. By the fall of 2006, the former wife had earned the 60 hours of college credit required to work as a teacher's aide.
After becoming a teacher's aide, the former wife decided to become a teacher, which requires an undergraduate degree in education. The former wife continued to attend the University of South Alabama at night in its adult-education program, *683 earning six hours of college credit per semester while working toward that degree. In addition, the former wife took extra courses in the summer when she was off work. The former wife anticipated that, at a rate of six credit hours per semester, she would graduate in the spring or the summer of 2010. At the time of the hearing, the former wife was working as a teacher's aide from 7:30 a.m. to 3:30 p.m. daily and was attending classes three nights a week from 6:00 p.m. to 8:30 p.m.
The former wife testified that, since the 2003 divorce, her living expenses totaled approximately $1,900 per month. That figure included $566 per month for a mortgage on a house she had purchased for $93,000, having paid 5% down from money she had received from cashing in an individual retirement account. That figure did not include her tuition costs of $1,500 per semester or her book costs and other fees. The former wife testified that she paid her tuition with grants that she did not have to repay[3] and student loans that she did have to repay. The former wife estimated that she owed close to $30,000 in student loans. The former wife stated that she had borrowed $10,000 for the 2007-2008 school term. After paying her tuition, the former wife had placed the remainder of the loan funds in "reserve." At the time of the hearing, she had $4,000 in her savings account and $3,000 to $4,000 in her checking account. The former wife testified that she had used her financial aid to cover the living expenses she could not cover with her monthly wages of $1,096[4] and her monthly child support of $607, which, when combined, total $1,703 per month. The former wife had been receiving $750 per month in alimony, but that had ceased in April 2006.
The former wife testified as follows:
"Q. [Former wife's counsel]: ... [W]hat are you asking the Court to do in regard to the reservation of alimony that is provided for in paragraph 14 and 15 in the judgment of divorce?
"A: I am just asking this Court, Judge, that I don't want to live off this man forever, I just want enough to cover until I get out of school which is estimated in spring or summer of 2010. And I guess it has taken me longer to get through school because I am a mother and maintaining my house and I have had some health problems, too, but I am doing the best that I can right now for my daughter and working full-time and going to school at night. And like I said, just an extension long enough until I get out of school."
The former husband testified that, since the 2003 divorce, he had been employed at the same place earning about the same wages.[5] He testified that, out of those wages, he had paid the former wife $607 per month in child support and $750 per month in alimony. The former husband objected to paying further alimony because, he said, he believed he had complied fully with the 2003 judgment; he also testified that part of the reason the parties *684 had divorced was because the former wife had refused to return to work and help pay their bills. The former husband testified that, although he had never tried to work, raise a child, and go to school simultaneously, he believed three years was sufficient time for the former wife to complete her education and obtain a job.
Following the hearing, the trial court entered a judgment on February, 21, 2008, stating, in pertinent part:
"1. With respect to the remaining issue left for the Court, the Court ... does order the [former husband] to pay the [former wife] $300 per month as temporary periodic alimony until May 2010.
"2. The Court does note that it is an extreme remedy for the Court to enlarge the temporary periodic alimony; however, in this case the Court does find that [the former wife] is working and going to school and is trying very hard to better herself which should benefit their child in the long run. The [former husband]'s assistance will help the [former wife] not have to go into as much debt to improve her life situation. This periodic alimony will be required so long as the [former wife] takes at least six credit hours per semester and shall begin February 2008 and end May 2010."
(Emphasis added.)
On appeal, the former husband argues that the trial court exceeded its discretion in modifying the rehabilitative-alimony award because the former wife did not file her motion to modify until after the time set for the termination of that award. I agree.
In this case, the trial court stated in the February 21, 2008, judgment that it was awarding "temporary periodic alimony." Periodic alimony is money used to support a former dependent spouse and to enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until the spouse is self-supporting or maintaining a status similar to the one enjoyed during the marriage. O'Neal v. O'Neal, 678 So.2d 161, 165 (Ala.Civ.App.1996). Rehabilitative alimony is that "sub-class of periodic alimony" designed to allow a spouse "time to re-establish a self-supporting status." Jeffcoat v. Jeffcoat, 628 So.2d 741, 743 (Ala.Civ.App.1993), overruled on other grounds, Crenshaw v. Crenshaw, 816 So.2d 1046, 1048 (Ala.Civ.App.2001).
"Rehabilitative alimony is a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating an incentive and opportunity for that spouse to become self-supporting."
24A Am.Jur.2d Divorce and Separation § 759 (2008). "In short, the purpose of rehabilitative alimony is to restore to a spouse who, because of the marriage, was either prevented from becoming or chose not to become self-supporting, those skills which would enable her or him to support herself or himself." Frye v. Frye, 385 So.2d 1383, 1389 (Fla.Dist.Ct.App.1980).
In the February 21, 2008, judgment, the trial court obviously awarded the former wife that form of periodic alimony known as "rehabilitative alimony." See Cheek v. Cheek, 500 So.2d 17, 19 (Ala.Civ.App.1986) (holding that the substance of the alimony award takes precedence over its label). The former wife specifically moved the court to modify the provisions in the divorce judgment in order to allow her to complete her education. At the outset of the trial, her attorney indicated that the former wife was seeking to continue or extend "rehabilitative alimony." The evidence presented by the former wife focused solely on her financial needs during the period when she was pursuing her *685 college education. The former wife specifically testified that she wanted her alimony extended "just until I get out of school." Most importantly, in its judgment, the trial court specifically stated that it was "enlarging" the former wife's alimony in order to assist the former wife from going into greater debt while she was improving her life situation. The trial court specifically stated that the award would last only until May 2010, a date the former wife testified to as a projected graduation date, and further stated that the award would be payable only so long as the former wife "takes at least six credit hours per semester."
Generally speaking, in order to obtain modification of a rehabilitative-alimony award, a recipient spouse must file a petition for modification before the expiration of the award. See, e.g., Giardina v. Giardina, 987 So.2d 606, 620 (Ala.Civ.App. 2008). In this case, by the terms of the 2003 divorce judgment, the award of rehabilitative alimony expired on April 17, 2006. The former wife did not file her modification petition until June 28, 2006, two months later. Based on the general rule, the trial court did not have jurisdiction to award the former wife additional rehabilitative alimony.
The trial court reasoned that it could nevertheless award the former wife additional rehabilitative alimony based on the clause in its 2003 judgment in which it "reserv[ed] the right to award periodic alimony." Our cases uniformly hold that it is error for a trial court to award rehabilitative alimony without reserving jurisdiction to award periodic alimony. See Fowler v. Fowler, 773 So.2d 491, 495 (Ala.Civ. App.2000), overruled on other grounds, J.L. v. A.Y., 844 So.2d 1221, 1225 (Ala.Civ. App.2002); and Giardina, supra. By requiring a trial court to reserve jurisdiction to later award periodic alimony following a period of rehabilitative alimony, those cases suggest a distinction between the broader class of alimony known as periodic alimony and the subclass known as rehabilitative alimony. See Coby v. Coby, 489 So.2d 597, 597 (Ala.Civ.App.1986) ("The wife, through able counsel, appeals, contending that she was entitled to periodic alimony or, alternatively, to `rehabilitative' alimony." (emphasis added)). Based on my review of pertinent Alabama caselaw, I have not uncovered a single case explaining that distinction and deciding whether a reservation of jurisdiction to award "periodic alimony" includes the authority to revive an award of rehabilitative alimony after it has expired by the terms of the judgment.
It may be argued that a reservation of jurisdiction to award periodic alimony naturally includes a reservation of jurisdiction to award rehabilitative alimony because, as has already been noted, the latter is a subclass of the former. However, such a reading would render the time limitation on an award of rehabilitative alimony totally meaningless. "Courts are to construe judgments as they construe written contracts, applying the same rules of construction they apply to written contracts." State Pers. Bd. v. Akers, 797 So.2d 422, 424 (Ala.2000). A provision in a contract should not be construed so as to render another portion of the contract meaningless. Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala.1995). Rather, courts should strive to construe the two provisions together to give effect to each. Id.
In construing a written instrument with seemingly conflicting clauses, the specific provision prevails over a general provision relating to the same subject matter. See, e.g., Alabama Dep't of Revenue v. Jim Beam Brands Co., 11 So.3d 858, 862-63 (Ala.Civ.App.2008); and Ward v. Check *686 Into Cash of Alabama, LLC, 981 So.2d 434, 438 (Ala.Civ.App.2007). Thus, to harmonize the two clauses and to give full effect to each, a general reservation of jurisdiction to award "periodic" alimony that follows a clause awarding rehabilitative alimony for a specific duration cannot be construed as granting to the trial court authority to revive the award of rehabilitative alimony after it has expired. Rather, it only reserves to the trial court the authority to determine, based on the results of the recipient spouse's rehabilitation efforts and other material circumstances then existing, whether equity demands that the spouse receive periodic alimony designed to maintain his or her former standard of living and to fix an award based on that determination.
In this case, the trial court did not award the former wife alimony designed to maintain her former standard of living. In fact, no evidence was adduced at trial regarding the standard of living the wife enjoyed during the parties' marriage. Instead, the trial court impermissibly revived the rehabilitative-alimony award in this case, reduced it to $300 per month, and conditionally extended it to May 2010. Based on the foregoing reasoning, I believe that the trial court acted outside its jurisdiction in reviving the rehabilitative-alimony award and that the February 21, 2008, judgment is therefore void. Because the majority of the court believes otherwise and affirms that judgment, I respectfully dissent.
NOTES
[1] I interpret paragraph 15 as preventing the former husband from petitioning the trial court during the stated three-year period to reduce his obligation to pay rehabilitative alimony on the basis that the former wife has obtained employment if the wages from that employment do not exceed $30,000 per year. Hence, I do not agree with the former wife's contention that paragraph 15 implies that rehabilitative alimony will continue if she is not earning wages over $30,000 by April 17, 2006.
[2] Apparently, the former wife discontinued working two jobs at some point, but the record is not clear as to when that occurred.
[3] At one point, the former wife testified that had she received $2,000 to $3,000 in grants for one semester, which would have covered her entire tuition costs, but she later stated that she was mistaken. The record contains no evidence of the amount of the grants the former wife has received.
[4] The evidence established that the former wife had earned $19,990 in 2003, $17,286 in 2004, $16,028 in 2005, $10,688.40 in 2006, and $14,916.84 in 2007.
[5] The former husband earned $64,380 in 2005, $60,089.54 in 2006, and either $54,931 (as evidenced by a W-2 form the former husband introduced) or $61,811.45 (as evidenced by a W-2 form the former wife introduced) in 2007.